Robert J. MEALEY, Paola M. Mealey, Leo A. Gagne, Vivian Gagne, Alaska Title Guaranty Company, Seattle-First National Bank, Trustee for Alaska Distributors Co. Profit Sharing Trust, Appellants,

v.

Carolyn C. MARTIN, Appellee.

File No. 1069.

Supreme Court of Alaska.

May 4, 1970.

Richard L. McVeigh, of Kalamarides & McVeigh, Richard L. Eckert, of Irvine & Eckert, Anchorage, for appellants.

Verne O. Martin, Anchorage, for appellee.

Before DIMOND, RABINOWITZ and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

## OPINION

DIMOND, Justice.

On February 11, 1966, the United States issued a patent to Arthur Zimmerman on his homestead. Prior to that date, Zimmerman had contracted certain debts which resulted in a sale of his homestead on execution in 1966 or 1967. In 1968 Zimmerman sold the property to appellee and she brought this suit to quiet title. Appellee was granted a summary judgment in which she was declared to be the owner of the property as against the claims of those who had previously purchased it at the execution sale. This appeal followed.

The basis for recognizing appellee's title was that under federal law a homestead could not become liable to the satisfaction of debts contracted prior to the issuance of patent, and therefore the sale of the property on execution for such debts was ineffective. The federal statute involved, which was enacted in 1862, provides:

No lands acquired under the provisions of the homestead laws and laws supplemental and amendatory thereof shall in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor.[1]

Appellants' position is that since the property was sold for satisfaction of Zimmerman's debts after patent had issued, the federal statute was not applicable because by that time all interest in the property by the United States had come to an end.

This is not what the statute provides. It says in plain language that homestead lands shall not be liable to the satisfaction of any debt contracted prior to the issuance of patent. It is the time that the debt is contracted that governs, and not the time when an attempt is made to satisfy the debt by execution and sale. We do not believe the statute can reasonably be read as meaning that homestead lands, not liable to the satisfaction of debts incurred prior to the issuance of patent, become liable after patent has been issued.

It is true that the statute was read that way by Justice Holmes in the case of Ruddy v. Rossi[2] in 1918. It was Justice Holmes' opinion that once patent is issued the land has left the ownership and control of the United States, that it is then part of the territory of a state and not subject to legislation on the part of the United States, that the United States then has no business to determine the policy to be pursued concerning privately owned land within a state, and therefore that the statute should be construed as having no application after the interest of the United States as owner is at an end, which is after patent has been issued.

The difficulty, so far as appellants' position is concerned, is that Justice Holmes' opinion was a minority view. The majority of the United States Supreme Court construed the statute the other way, and held that Congress had the power thus to restrict the alienation of homestead lands after the United States had parted with title by issuance of patent.[3] Appellants urge us, nevertheless, to adopt Justice Holmes' dissenting view on the assumption that now, 52 years later, the United States Supreme Court would reverse its position in the Ruddy case in view of the great changes made in the law and in commer-

1. 43 U.S.C.A. § 175 (1964).

2. 248 U.S. 104, 107–111, 39 S.Ct. 46, 47–48, 63 L.Ed. 148, 151–153 (1918).

3. Ruddy v. Rossi, 248 U.S. 104, 106–107, 39 S.Ct. 46, 47, 63 L.Ed. 148, 150–151 (1918).

cial transactions and in light of the continued loss of state rights to the federal government.

 We have not been referred to any decisions of federal or state courts which show that the doctrine enunciated in *Ruddy* has become eroded with the passage of time. In the absence of some persuasive indication that the United States Supreme Court today would not adhere to its decision in *Ruddy*, we are not inclined to presume that this would be the case. We are required by the supremacy clause of the federal constitution to accept the federal statute and the construction given it by the United States Supreme Court.[4]

Appellants refer us to decisions holding that there is nothing in 43 U.S.C.A. § 175 prohibiting the homesteader from waiving the protection of the statute by voluntary act, such as executing a mortgage or acquiescing in the sale of the land or by abandoning his homestead. Appellants contend that there was such a waiver here when Zimmerman signed a confession of judgment for the debts for which the property was executed upon and sold.

The confession of judgment provided in relevant part:

I, Arthur Zimmerman defendant above named, * * * hereby confess judgment in favor of plaintiff * * * for * * * $6,066.48.

This confession of judgment is for a debt justly due and owing from me to the plaintiff. * * * I hereby assent to entry of judgment upon this confession and to execution thereon.

Pursuant to this confession of judgment, the lower court entered judgment against Zimmerman in which it was provided that the judgment could be satisfied from the homestead property.

 By confessing judgment Zimmerman acknowledged an indebtedness on which it was contemplated a judgment would be entered.[5] There is nothing in the confession by itself that purports to constitute an acquiescence by Zimmerman in the sale of his property.

It is true that Zimmerman not only confessed to the entry of judgment against him, but also "to execution thereof." But this was general and did not constitute his specific consent to the sale of his homestead lands in payment of the debt. It is also true that the judgment provided that execution should be satisfied from the homestead property. But such specific reference to the homestead first made its appearance in the judgment, was not a part of Zimmerman's confession of judgment, and therefore is not decisive of the question of whether Zimmerman consented to the sale of this particular property.

 If there may be a waiver of 43 U.S.C.A. § 175, and there is authority indicating there may not be,[6] it must relate expressly to specific property in order to be effective.[7] In addition, it must appear that Zimmerman knew of his rights under the statute to have his homestead exempt from being liable for satisfaction of his debt, and that he intended to relinquish that right.[8] That was not established here. There was no waiver of the provisions of 43 U.S.C.A. § 175.

The judgment quieting title to the property in appellee is affirmed.

BONEY, J., not participating.

4. Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967); Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 220–221, 51 S.Ct. 453, 457–458, 75 L.Ed. 983, 990 (1931); Provident Sav. Inst. v. Massachusetts, 6 Wall (U.S.) 611, 628, 18 L.Ed. 907, 912 (1868).

5. Information Buying Co. v. Miller, 173 Ga. 786, 161 S.E. 617, 619 (1931).

6. Mettler v. Rocky Mountain Sec. Co., 68 Mont. 406, 219 P. 243, 245 (1923).

7. Benning v. Hessler, 144 Minn. 403, 175 N.W. 682, 683 (1920); St. Marie v. Chester B. Brown Co., 84 Idaho 216, 370 P.2d 195, 196 (1962).

8. A waiver is an intentional relinquishment of a known right. Hammonds v. State, 442 P.2d 39, 42 (Alaska 1968).