[No. 44140. En Banc. February 3, 1977.]

ASSOCIATION OF WASHINGTON STEVEDORING COMPANIES, ET AL, *Respondents,* V. THE DEPARTMENT OF REVENUE, *Appellant.*

*Slade Gorton, Attorney General,* and *Richard D. Hicks, Assistant,* for appellant.

*Bogle & Gates, John T. Piper,* and *D. Michael Young,* for respondents.

This opinion was prepared by Justice Robert T. Hunter prior to his retirement. It is adopted by the undersigned Justices as the opinion of this Court.

The State appeals from a declaratory judgment of the Superior Court for Thurston County, declaring a state tax repugnant to the United States Constitution. This court has taken jurisdiction as the proper forum for disposition of such issue, pursuant to RCW 2.06.030(c) and ROA I–14(1)(c).

The trial court held that WAC 458–20–193D, as amended in 1974 to apply the State's general business and occupation tax to stevedoring activity, contravenes the interstate commerce clause (U.S. Const. art. 1, § 8) and the import–export ·clause (U.S. Const. art. 1, § 10). The trial court was adhering to two United States Supreme Court decisions, one of them having been brought up from this jurisdiction, on the precise issue raised in this appeal. We find the two cases to be indistinguishable, factually, from the instant case; hence, we also adhere to them, and affirm the trial court.

The first case the Supreme Court decided on the issue was *Puget Sound Stevedoring Co. v. Tax Comm'n*, 302 U.S. 90, 82 L. Ed. 68, 58 S. Ct. 72 (1937). Our court had upheld a state tax on the loading and unloading of ships plying interstate and foreign commerce. That decision was appealed to the United States Supreme Court, which reversed, holding that the business of loading and unloading ships *is* interstate commerce and is therefore not taxable by the state. We quote language from *Puget Sound Stevedoring Co. v. Tax Comm'n, supra* at 93, to show the court's reasoning:

> "[S]tevedoring services are essential to waterborne commerce and always commence in the hold of the vessel and end at the 'first place of rest,' and vice versa." . . . The movement is continuous, is covered by a single contract, and is necessary in all its stages if transportation is to be accomplished without unreasonable impediments.

Almost 10 years later the City of New York attempted to impose the same type of tax on identical stevedoring activity. The New York Supreme Court struck the tax down on authority of *Puget Sound, supra*. The Court of Appeals

then affirmed, and certiorari was granted by the United States Supreme Court, which also affirmed. *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U.S. 422, 91 L. Ed. 993, 67 S. Ct. 815 (1947), thus became the second of what we refer to, for the sake of convenience, as the "stevedoring cases."

The petitioners in *Joseph v. Carter & Weekes Stevedoring Co., supra* at 425–26, presented the Supreme Court with the same argument that is now presented by appellant to this court, quoting as follows:

> Petitioners recognize the force of the *Puget Sound* case as a precedent. Their argument is that subsequent holdings of this Court have indicated that the reasons which underlay the decision are no longer controlling in judicial examination of the constitutionality of state taxation of the gross proceeds derived from commerce, subject to federal regulation. They cite, among others, these later decisions: *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250; *Southern Pacific Co.* v. *Gallagher,* 306 U. S. 167; *McGoldrick* v. *Berwind–White Co.,* 309 U. S. 33; *Department of Treasury* v. *Wood Preserving Co.,* 313 U. S. 62.

The court then analyzed the cases, stating as follows:

> Upon examination this history gives an impression that there has been a doubt as to the continued vitality of *Puget Sound.* We come now face to face with the problem of overruling or approving the case.

*Joseph v. Carter & Weekes Stevedoring Co., supra* at 430.

*Puget Sound* was reaffirmed. The cases cited by petitioners were distinguished on the reasoning that stevedoring is essentially a part of the commerce itself, more a part of commerce than any of the activities held validly taxed in the later cases. The court stated:

> Though all of these cases were closely related to transportation in commerce both in time and movement, it will be noted that in each there can be distinguished a definite separation between the taxable event and the commerce itself.

*Joseph v. Carter & Weekes Stevedoring Co., supra* at 433.

The United States Supreme Court obviously views stevedoring as an integrated inseparable part of commerce by sea, and hence absolutely protected.

The appellant in the cause before us makes the argument that subsequent decisions of the United States Supreme Court have either impliedly overruled the stevedoring cases or eroded the principles upon which the result in those cases was reached. As authority for this argument, appellant cites some of the same cases presented by petitioners in *Carter & Weekes,* in support of the same theory. Appellant also cites more recent Supreme Court commerce clause decisions, including *Central Greyhound Lines, Inc. v. Mealey,* 334 U.S. 653, 92 L. Ed. 1633, 68 S. Ct. 1260 (1948); *Interstate Oil Pipe Line Co. v. Stone,* 337 U.S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264 (1949); *Canton R.R. v. Rogan,* 340 U.S. 511, 95 L. Ed. 488, 71 S. Ct. 447, 20 A.L.R.2d 145 (1951); *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 44 L. Ed. 2d 1, 95 S. Ct. 1538 (1975). A very recent import–export clause case is also cited, *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535 (1976).

 We have examined carefully each of the cases cited by appellant, and others not cited. (*Spector Motor Serv., Inc. v. O'Connor,* 340 U.S. 602, 95 L. Ed. 573, 71 S. Ct. 508 (1951), and *Michigan–Wisconsin Pipe Line Co. v. Calvert,* 347 U.S. 157, 98 L. Ed. 583, 74 S. Ct. 396 (1954).) We are of the opinion that the United States Supreme Court has not overruled its stevedoring decisions by implication, nor has there been any clear indication that the court would welcome the opportunity to do so.

We are therefore persuaded that we must hold the tax invalid; we do so in recognition of our duty to abide by controlling United States Supreme Court decisions construing the federal constitution. Hence, we find it unnecessary to discuss the aforementioned cases beyond the fact that nowhere in them do we find language criticizing, expressly contradicting, or overruling (even impliedly) the stevedoring cases.

We have been constrained before by controlling United States Supreme Court decisions in this area. *See B.F. Goodrich Co. v. State,* 38 Wn.2d 663, 231 P.2d 325, *cert. denied,* 342 U.S. 876, 96 L. Ed. 659, 72 S. Ct. 167 (1951), where essentially the same arguments were raised as are raised in this appeal, on the issue of whether the State violated the commerce clause by assessing a tax on Goodrich's activity. As here, a United States Supreme Court case was controlling. To ease our doubts about the required result, we stated in *Goodrich* on pages 674 and 676:

> Whatever we may think of this distinction from the standpoint of practical effect, our only concern with it here is that it has been made and must be observed. . . .
>
> . . .
>
> These questions, however, are by no means novel; they have often been raised, and the supreme court has often considered them, as an analysis of its cases will readily reveal. It scarcely needs be said that, with respect to matters involving the Federal constitution, we, as an inferior tribunal, must follow the pronouncements of that court no matter what our private views may be.

*See also Tricon, Inc. v. King County,* 60 Wn.2d 392, 374 P.2d 174, *cert. denied,* 372 U.S. 908, 9 L. Ed. 2d 717, 83 S. Ct. 721 (1962). The courts of the several states seem to be unanimous in their recognition of this obligation to follow controlling Supreme Court precedent on such matters.[1]

---

[1]For example, the Indiana Supreme Court has said:

> Regardless of our personal opinion in this matter both as to the law and the facts, we are bound, as judges of this Court, under the oath we took to follow the Constitution of the United States, as interpreted by the Supreme Court of the United States, and that Court, in our opinion, has determined the issue in this case.

*Cuffel v. State,* 247 Ind. 357, 359, 215 N.E.2d 36, 37 (1966).

*Accord, Mealey v. Martin,* 468 P.2d 965, 966–67 (Alas. 1970); *Baldwin v. Arizona Flame Restaurant,* 82 Ariz. 385, 313 P.2d 759 (1957); *People v. Dorado,* 62 Cal. 2d 338, 398 P.2d 361, 42 Cal. Reptr. 169 (1965); *Belton v. Gebhart,* 33 Del. Ch. 144, 91 A.2d 137 (1952), *aff'd sub nom. Brown v. Board of Education,* 349 U.S. 294, 99 L. Ed. 1083, 75 S. Ct. 753 (1955); *Looper v. Georgia, S. & F. Ry.,* 213 Ga. 279, 99 S.E.2d 101 (1957); *Cuffel v. State, supra; Trinkle v. Hand,* 184 Kan. 577, 337 P.2d 665, *cert. denied,* 361 U.S. 846, 4 L. Ed. 2d 85, 8C S. Ct. 101 (1959); *Glover v. Minneapolis Bldg. Trades Council,* 215 Minn. 533, 10 N.W.2d 481, 147

Fully mindful of our prior criticism of the principles and reasoning of the stevedore cases (*see Washington–Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 167, 367 P.2d 112, 115–16 (1961)), we must nevertheless hold the instant tax on stevedoring invalid.

The judgment of the trial court is affirmed.

WRIGHT, C.J., ROSELLINI, HAMILTON, STAFFORD, BRACHTENBACH, JJ., and WIEHL, J. Pro Tem., concur.

UTTER, J. (dissenting)—I believe the stevedoring cases[2] upon which the majority relies have been impliedly overruled and are also distinguishable from the facts here presented. The United States Supreme Court in *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 58 S. Ct. 546, 115 A.L.R. 944 (1938); *Central Greyhound Lines, Inc. v. Mealey,* 334 U.S. 653, 92 L. Ed. 1633, 68 S. Ct. 1260 (1948); *Interstate Oil Pipe Line Co. v. Stone,* 337 U.S. 662, 93 L. Ed. 1613, 69 S. Ct. 1264 (1949); *Canton R.R. v. Rogan,* 340 U.S. 511, 95 L. Ed. 488, 71 S. Ct. 447, 20 A.L.R.2d 145 (1951); *Colonial Pipeline Co. v. Traigle,* 421 U.S. 100, 44 L. Ed. 2d 1, 95 S. Ct. 1538 (1975), has severely eroded the scope of the "direct–indirect" test enunciated in the stevedoring cases. In addition, the Supreme Court's inaction in the face of the questioning of the continued validity of the stevedoring cases in *Martin Ship Serv. Co. v. Los Angeles,* 34 Cal. 2d 793, 215 P.2d 24 (1950); *Washington–Oregon Shippers Cooperative Ass'n v. Schumacher,* 59 Wn.2d 159, 367 P.2d 112 (1961); *HC&D Moving & Storage Co. v. Yamane,* 48 Hawaii 486, 405 P.2d 382 (1965), raises further doubts as to the necessity of their use as mandatory precedent here.

A.L.R. 1071 (1943); *Bourjois Sales Corp. v. Dorfman,* 273 N.Y. 167, 7 N.E.2d 30 (1937). *See generally* 21 C.J.S. *Courts* § 206.

[2]*Puget Sound Stevedoring Co. v. Tax Comm'n,* 302 U.S. 90, 82 L. Ed. 68, 58 S. Ct. 72 (1937); *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U.S. 422, 91 L. Ed. 993, 67 S. Ct. 815 (1947).

The clause here at issue is the commerce clause[3] rather than the import–export clause.[4] A state generally has broader discretion in taxing activities than goods. *Canton R.R. v. Rogan, supra.* The commerce clause involves a grant of power to Congress, in the face of which a state may exercise its power so long as it does not negate the union's ability to act. The import–export clause imposes the same limits as the commerce clause as well as depriving the states of the ability to levy an impost or duty on an export or import. *Michelin Tire Corp. v. Wages,* 423 U.S. 276, 46 L. Ed. 2d 495, 96 S. Ct. 535 (1976).

The business and occupation tax, even though it reaches stevedoring activity, is not a tax on imports or an impost or duty on the activity of importing. Stevedores are not importers nor is stevedoring an importing activity, for stevedores have no direct relationship to imports, but only to the process of importing and exporting. *Sea–Land Serv., Inc. v. County of Alameda,* 12 Cal. 3d 772, 528 P.2d 56, 117 Cal. Rptr. 448 (1974); *Canton R.R. v. Rogan, supra.*

Stevedoring activity, while necessary to interstate commerce, is not in itself interstate commerce. All activity takes place locally, that is, wholly within this state, and involves the type of business for which the state affords protection. *Michelin Tire Corp. v. Wages, supra* at 289. This State's business and occupation tax is not selectively imposed. It is a general occupation tax and does not substantially impair or prohibit transportation. As such it does not violate the import–export clause.

Even if the loading and unloading of ships can be said to have interstate characteristics, the State may still levy a

---

[3]U.S. Const. art. 1, § 8, reads in part:

"To regulate commerce with foreign nations, and among the several states, and with the Indian tribes;"

[4]U.S. Const. art. 1, § 10, reads in part:

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws: and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the congress."

nondiscriminatory gross receipts tax if there is no multiple burden or regulation of commerce. A nondiscriminatory tax on interstate commerce is valid if it is apportioned and does not reach activities beyond the state's borders. *Canton R.R. v. Rogan, supra* at 515.

A tax which is not an impost or duty and therefore prohibited, or an act of direct regulation, such as a license, is a general tax and is not forbidden unless it is a regulation of commerce in disguise. *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964). The State can tax but cannot regulate commerce by any means. *Brown v. Maryland,* 25 U.S. (12 Wheat.) 419, 448-49, 6 L. Ed. 678 (1827). However, a general business and occupation tax is "not a licensing provision for the regulation of a business or calling, nor does it impose conditions prerequisite to engaging in business within the state." *Smith v. State,* 64 Wn.2d 323, 333, 391 P.2d 718 (1964).

There is no showing that this tax is offensive to the commerce clause and it should be upheld.

DOLLIVER, J., concurs with UTTER, J.