[No. 51110–1.  En Banc.  March 6, 1986.]

TYLER PIPE INDUSTRIES, INC., *Appellant,* v. THE
DEPARTMENT OF REVENUE, *Respondent.*

*Cartano, Botzer, Larson & Birkholz,* by *Thomas C. McKinnon* and *Thomas A. Sterken,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *James R. Tuttle, Assistant,* for respondent.

DOLLIVER, C.J.—Tyler Pipe Industries, Inc., challenges a trial court ruling which upheld the constitutionality of Washington's business and occupation (B & O) tax against Tyler Pipe's commerce clause challenge. The trial court denied Tyler Pipe's request for a tax refund holding that the State had sufficient nexus to tax Tyler Pipe and that the federal interstate income tax act, 15 U.S.C. § 381 *et seq.* (1982), was inapplicable to Washington's B & O tax. We affirm the trial court.

The Washington Department of Revenue assessed B & O

taxes against Tyler Pipe in the approximate amount of $130,000 for its wholesaling activities in Washington. The tax, assessed pursuant to RCW 82.04.220 and .270, is on gross receipts from sales to Washington customers between January 1, 1976, and September 30, 1980 (the audit period).

Tyler Pipe obtained a preliminary injunction against collection of this tax which we reversed in *Tyler Pipe Indus., Inc. v. Department of Rev.*, 96 Wn.2d 785, 638 P.2d 1213 (1982). Tyler Pipe subsequently paid the taxes and filed this action for a refund. The trial court issued its memorandum opinion on June 15, 1984, denying Tyler Pipe's claim to a tax refund. A subsequent motion for reconsideration was denied. On August 4, 1985, we accepted this case for review as a companion case with *National Can Corp. v. Department of Rev.*, 105 Wn.2d 327, 715 P.2d 128 (1986).

I

The facts, which were detailed by the trial court and for which there is substantial evidence (*Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959)) are as follows:

Tyler Pipe is a Delaware corporation with its principal place of business in Tyler, Texas. Tyler Pipe markets, sells, and distributes cast iron, pressure and plastic pipe and fittings, and drainage products nationwide. Tyler Pipe owns several subsidiaries which manufacture and sell pipe and plumbing products. Tyler–Texas and Tyler Plastics are wholly owned subsidiaries of Tyler Pipe. These two corporations manufacture the products sold by Tyler Pipe to Washington customers. All products sold in Washington are manufactured outside the state.

Tyler Pipe is organized into four divisions: marketing, purchasing and distribution, finance, and industrial relations. The marketing division consists of the drainage, waste, vent (DWV) sales department and the utility sales department. Tyler Pipe markets its products through these two departments. Most of Tyler Pipe's customers are wholesale distributors. In Washington, both departments

use the same sales representative, Ashe and Jones, Inc., of Seattle.

The DWV sales department includes a cast–iron DWV sales manager, three regional sales managers, and a Wade, Inc., sales manager. Wade is a wholly owned subsidiary of Tyler, marketing items auxiliary to a DWV plumbing piping system. Wade shares with Tyler a substantial number of the same officers and employees. Wade has its own Washington sales representative, Mechanical Agents, Inc. (MA) of Seattle, which maintains an inventory of Wade products (owned by Wade in MA's warehouse in Seattle).

Tyler's regional sales manager, Warren VanDerbeck, is responsible for all DWV (including Wade) sales in a region including Washington state. Tyler Pipe's sales representative for Washington state, Ashe and Jones, Inc., is a Washington corporation and handles all sales functions pertaining to its products in this state; however, both Tyler Pipe and Wade are represented in certain southern Washington counties by Bridgeport Sales, Ltd., of Portland, Oregon. For every sale made in Washington, a commission is paid to the appropriate sales representative even if the customer directly contacts Tyler Pipe or its subsidiaries about the sale.

Virtually all information received by Tyler Pipe, or any subsidiary, regarding the Washington market for Tyler Pipe products is communicated from the sales representatives. This information is necessary to keep Tyler Pipe competitive in the marketplace. The sales representatives regularly act on behalf of Tyler Pipe. In addition to their solicitations, the sales representatives handle approximately two–thirds of the orders to Tyler Pipe from Washington customers.

Tyler Pipe's Washington sales representatives perform any local activities necessary for maintenance of Tyler Pipe's market and protection of its interests because Tyler has no personnel designated as employees residing in Washington. The sales representatives are involved in all Tyler Pipe Washington sales transactions either actively or

available to assist, if necessary. The sales functions of these representatives are essentially identical to those of the factory salesmen who represent Tyler in certain other parts of the country.

Neither Tyler Pipe nor any subsidiary paid to any other state any tax measured in whole or in part by sales in Washington, or income resulting from those sales, during the audit period. Neither Tyler Pipe nor any subsidiary paid any real or personal property taxes in Washington during or for the audit period.

## II

The first issue is whether Washington's B & O tax discriminates against interstate commerce thereby violating the commerce clause of the United States Constitution. The four requirements for a valid state tax on interstate commerce under the commerce clause are as follows: (1) there must be a sufficient connection or nexus between the interstate activities and the taxing state; (2) the tax must be fairly apportioned; (3) the tax must not discriminate against interstate commerce; and (4) the tax must be fairly related to the services provided by the state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076, *reh'g denied,* 430 U.S. 976 (1977). *Accord, Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 659 P.2d 463, *appeal dismissed,* 104 S. Ct. 542 (1983). The key factor in determining the constitutionality of Washington's B & O tax focuses on whether the tax discriminates against interstate commerce. As we held in the companion case of *National Can Corp. v. Department of Rev.,* 105 Wn.2d 327, 715 P.2d 128 (1986), Washington's B & O tax does not discriminate against interstate commerce and the recent United States Supreme Court case of *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620, *reh'g denied,* 469 U.S. 912, 83 L. Ed. 2d 222, 105 S. Ct. 285 (1984) is distinguishable.

## III

The key issue in this case and the basis of Tyler Pipe's

challenge is whether its connections with the State of Washington were sufficient to satisfy constitutional standards for imposition of Washington's B & O tax under the due process and commerce clauses of the United States Constitution. Due process and commerce clause arguments are closely related, especially concerning the nexus issue, and will be considered together. *Chicago Bridge & Iron Co. v. Department of Rev., supra* at 819.

■ The United States Supreme Court has held the due process clause of the Fourteenth Amendment imposes two requirements on a state before it can tax income generated in interstate commerce: (1) some minimal connection or "nexus" between the interstate activities and the taxing state and (2) a rational relation between the income attributed to the state and the intrastate value of the enterprise. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 436–37, 63 L. Ed. 2d 510, 100 S. Ct. 1223 (1980); *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (1978).

■ The Department of Revenue has stated the requisite minimal connection or "nexus" in WAC 458–20–193B. *See* RCW 82.32.300. Under section 193B, the crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for the sales.

This functional approach is in accord with *Standard Pressed Steel Co. v. Department of Rev.,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975). In *Standard Pressed Steel,* the United States Supreme Court found a sufficient nexus for gross receipts tax when an out–of–state corporation had only one in–state employee. This employee had the responsibility of maintaining a relationship with the corporation's primary customer. No sales or orders were taken by the employee. The employee, however, regularly consulted with the customer regarding its needs for the manufactured product. The Supreme Court based its decision on the employee's activities which "made possible the

realization and continuance of valuable contractual relations between" the corporation and its primary customer. *Standard Pressed Steel Co.,* at 562.

While not denying the activities of Tyler Pipe's sales representatives within this state helped it to establish and maintain its Washington customers, Tyler Pipe claims that because these sales representatives are independent contractors, their activities should not be considered under a due process "nexus" test.

The United States Supreme Court has indicated the characterization of an in–state sales representative as an "independent contractor" is without constitutional significance with regard to the nexus issue. *Scripto, Inc. v. Carson,* 362 U.S. 207, 4 L. Ed. 2d 660, 80 S. Ct. 619 (1960). In *Scripto,* the Court determined that allowing the characterization of the taxpayer's in–state agent as an independent contractor to be a determining factor in whether a company would be taxed "would open the gates to a stampede of tax avoidance." *Scripto,* at 211. The test for nexus, the Court went on to say, should be simply the nature and extent of the agent's activities. *Scripto,* at 211. *Cf.* Princess House, Inc. v. Department of Revenue, State Bd. of Tax Appeals order 18818 (Mar. 24, 1980) ("substantial nexus" found where out–of–state taxpayer was represented within the state by an independent manufacturer's representative paid on a commission basis).

The trial court's findings of fact, supported by substantial evidence in the record, reveal ample activities by the in–state sales representative which helped Tyler Pipe establish and maintain its market in this state. This is true even if its Washington based subsidiary (Wade) is not considered. Tyler Pipe challenges a number of the trial court's findings and conclusions concerning this issue. Tyler Pipe's challenges are without merit. Reviewing the entire record before us, we find substantial evidence to support each fact and conclusion entered by the trial court. *See Goodman v. Darden, Doman & Stafford Assocs.,* 100 Wn.2d 476, 670 P.2d 648 (1983). *See also Ridgeview Properties v. Starbuck,*

96 Wn.2d 716, 719, 638 P.2d 1231 (1982) (substantial evidence is evidence in sufficient quantum to persuade a reasonable person of the truth of the declared premise).

The sales representatives acted daily on behalf of Tyler Pipe in calling on its customers and soliciting orders. They have long–established and valuable relationships with Tyler Pipe's customers. Through sales contacts, the representatives maintain and improve the name recognition, market share, goodwill, and individual customer relations of Tyler Pipe.

Tyler Pipe sells in a very competitive market in Washington. The sales representatives provide Tyler Pipe with virtually all their information regarding the Washington market, including: product performance; competing products; pricing, market conditions and trends; existing and upcoming construction projects; customer financial liability; and other critical information of a local nature concerning Tyler Pipe's Washington market. The sales representatives in Washington have helped Tyler Pipe and have a special relationship to that corporation. The activities of Tyler Pipe's agents in Washington have been substantial.

The second prong under the due process test (and the second prong in the commerce clause analysis in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076, *reh'g denied,* 430 U.S. 976 (1977)) requires a rational relationship between the income attributed to the taxing state and the intrastate value of the enterprise. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 437, 63 L. Ed. 2d 510, 100 S. Ct. 1223 (1980). This test is met if the State's taxing formula is not arbitrary and does not tax the taxpayer "'out of all appropriate proportion to the business transacted . . . in that State,'" *Exxon Corp. v. Department of Rev.,* 447 U.S. 207, 227, 65 L. Ed. 2d 66, 100 S. Ct. 2109 (1980) (quoting *Hans Rees' Sons, Inc. v. North Carolina ex rel. Maxwell,* 283 U.S. 123, 135, 75 L. Ed. 879, 51 S. Ct. 385 (1931)). The taxpayer has the burden of proving by clear and cogent evidence that the tax is in fact out of all appropriate proportion to the business

transaction. *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 274, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (1978). The Supreme Court has refused to impose strict restraints on the State's taxing formula. *Moorman Mfg. Co.,* at 280.

Tyler Pipe cites *Hans Rees' Sons, Inc.* for the proposition that Washington's B & O tax is unconstitutional because it is out of all proportion to its activities in the state. The Court concluded in *Hans Rees' Sons, Inc.* that the State's formula was out of proportion when it produced a tax on approximately 80 percent of the taxpayer's income when only 17 percent of that income actually had its source in the state. *Hans Rees' Sons, Inc.,* at 135.

This case is not applicable. Not only does it deal with an entirely different tax scheme, but Washington's B & O tax does not approach the disparity of proportion found in the tax scheme in the *Hans Rees' Sons, Inc.* case. Also, the Supreme Court previously has upheld Washington's B & O tax on entire gross receipts from sales made by the taxpayer into Washington state. *Standard Pressed Steel Co. v. Department of Rev.,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975). Because the receipts from sales made to other states were not included in the taxpayer's taxable gross receipts, the Court concluded that the tax was "apportioned exactly to the activities taxed . . ." *Standard Pressed Steel Co.,* at 564. *See also Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 830, 659 P.2d 463, *appeal dismissed,* 104 S. Ct. 542 (1983) (Washington's B & O tax is inherently proportional to in–state activities). A rational relationship and not a strict exact formula is all that is necessary under the due process and commerce clauses. *Moorman Mfg. Co.,* at 280.

The State has not attempted to tax any sales transactions other than those involving Washington customers. Tyler Pipe urges that any receipts earned from sales from its utility division or from sales of orders placed directly to it from its Washington customers should be exempted from Washington's B & O tax. In its memorandum opinion, the trial court found no useful distinction between the utility

division and the DWV division of Tyler Pipe for the purposes of taxing its sales within this state. This is supported by the findings of fact and the record. We concur with the holding of the trial court that the tax, as levied by the State, was in proportion to Tyler's in–state activity. We affirm the trial court's finding of sufficient nexus between Tyler Pipe and the State of Washington.

IV

■ The State raises the issue of Tyler Pipe's standing for the first time on appeal. Standing was not an issue at the trial level. If the issue of standing is not submitted to the trial court, it may not be considered on appeal. *Baker v. Baker*, 91 Wn.2d 482, 484, 588 P.2d 1164 (1979). *See* RAP 2.5(a). We refuse to review the issue of standing.

■ Finally, Tyler Pipe raises the issue of whether the federal interstate income tax act, 15 U.S.C. § 381 *et seq.* (1982), exempts Tyler Pipe from Washington's B & O tax. This argument is without merit. The federal statute applies only to a "net income tax"; Washington's B & O tax is not a net income tax or a net tax on anything. Rather, "B & O taxes are for the privilege of engaging in business during a certain time frame, measured by applying a rate of tax to some tax base." *Puyallup v. Pacific Northwest Bell Tel. Co.*, 98 Wn.2d 443, 451, 656 P.2d 1035 (1982).

The trial court is affirmed.

UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.