[No. 51910-2. En Banc. March 6, 1986.]

NATIONAL CAN CORPORATION, ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

*Bogle & Gates, John T. Piper, D. Michael Young, Franklin G. Dinces,* and *James R. Johnston,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *William B. Collins, Assistant,* for respondent.

UTTER, J.—This is a direct appeal from the trial court where various commercial enterprises (Taxpayers) claimed Washington's multiple activities exemption to the business and occupation (B & O) tax, RCW 82.04.440, discriminates against interstate commerce in violation of the commerce clause, U.S. Const. art. 1, § 8. The trial court ruled there was no unlawful discrimination. We agree and hold for the respondent, Department of Revenue, that the challenged exemption does not violate the commerce clause. Our holding makes it unnecessary to reach the other issues raised by the parties concerning the constitutionality of both the tax refund interest provision, RCW 82.32.060, and the proposed legislation, ESSB 3678, as well as the appropriate form of relief to be afforded Taxpayers.

Fifty–three separate actions for refunds of B & O taxes paid to the Department were filed. Each Taxpayer claimed the tax violates the commerce clause. These actions were joined for decision by the Thurston County Superior Court which granted the Department's motion for summary judgment and denied the Taxpayers' motions for injunctions against further collection of the B & O taxes in question. The 53 cases were consolidated for this appeal and, in addition, 52 other substantially similar actions are pending in Thurston County Superior Court. The amount in question is estimated to exceed $423 million.

Three plaintiffs were selected by the parties to serve as "test cases" in the appeal. Kalama Chemical, Inc., a representative plaintiff, manufactures its products in Washington and sells them outside of Washington. Xerox Corporation, the second representative plaintiff, manufactures its products outside Washington and sells them within Washington. The appellant in a companion case would appear to fit most closely within this category of plaintiffs. *See Tyler Pipe Indus., Inc. v. Department of Rev.,* 105 Wn.2d 318, 715 P.2d 123 (1986). National Can

Corporation, the third representative plaintiff, manufactures products in Washington for sale outside Washington, and also manufactures products outside Washington for sale in Washington. Kalama Chemical, Inc., seeks a refund of the manufacturing tax it paid ($495,000); Xerox Corporation seeks a refund of the wholesale tax it paid ($1.5 million); National Can Corporation seeks a refund of both the manufacturing and wholesale taxes it paid (approximately $900,000). The period in dispute is from 1980 to the present.

The issue before us is whether Washington's B & O tax exemption, RCW 82.04.440, violates the commerce clause because it (1) discriminates against interstate commerce, (2) is unfairly apportioned, or (3) is not fairly related to the services provided by the State.

Neither this court, nor the State Legislature, "is the final arbiter" of commerce clause issues. *See Southern Pac. Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 89 L. Ed. 1915, 65 S. Ct. 1515 (1945). In an earlier challenge to this B & O tax, we recognized "our duty [is] to abide by controlling United States Supreme Court decisions construing the federal constitution." *Association of Wash. Stevedoring Cos. v. Department of Rev.,* 88 Wn.2d 315, 318, 559 P.2d 997 (1977), *rev'd,* 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978). This court's rulings on the constitutionality of the Washington B & O tax have generally withstood the United States Supreme Court's scrutiny, *see, e.g., General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1963); *Standard Pressed Steel Co. v. Department of Rev.,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975), except when we have read the commerce clause too broadly and struck down the tax. *See Association of Wash. Stevedoring Cos. v. Department of Rev.,* 88 Wn.2d at 318–20.

We find ourselves today in a similar situation. For over 30 years, Washington's B & O tax has been repeatedly upheld by the federal courts against charges that it discriminated against interstate commerce. *See B.F. Goodrich Co. v. State,* 38 Wn.2d 663, 231 P.2d 325, *cert. denied,* 342

U.S. 876, 96 L. Ed. 659, 72 S. Ct. 167 (1951). In *B.F. Goodrich,* we held that the B & O tax does not discriminate against interstate commerce because, under that law, all wholesalers are taxed identically. We relied on the theory that any multiple–tax burdens on interstate commerce, whereby out–of–state businesses must pay a manufacturing tax in another state plus a wholesale tax in Washington, were merely "an inevitable consequence of the power of the several states to tax". 38 Wn.2d at 669; *see also General Motors Corp. v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962) (B & O tax upheld against charges of discrimination, applying the *Goodrich* analysis). The Supreme Court affirmed, *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964), but specifically declined to pass on the question of discrimination in the form of multiple–tax burdens because the appellant there failed to demonstrate any actual multiple–tax burden by showing that another state levied an equivalent tax.

In *Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 832, 659 P.2d 463, *appeal dismissed,* 464 U.S. 1013 (1983), this court upheld the tax against charges of discrimination in the form of multiple–tax burdens. The court cited *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 277 n.12, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (1978) for the proposition that the multiple–tax burdens experienced by interstate businesses are a "consequence of the *combined* effect of different states' laws" and were not caused by Washington's taxing scheme. 98 Wn.2d at 832. The United States Supreme Court dismissed the subsequent appeal "for want of a federal question," *Chicago Bridge & Iron Co. v. Washington Dep't of Rev.,* 464 U.S. 1013, 78 L. Ed. 2d 718, 104 S. Ct. 542 (1983), which we understand to be a decision on the merits. *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 476 n.19, 58 L. Ed. 2d 740, 99 S. Ct. 740, *reh'g denied,* 440 U.S. 940, 59 L. Ed. 2d 500, 99 S. Ct. 1290 (1979).

Taxpayers assert, however, that a recent Supreme Court case, *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d

540, 104 S. Ct. 2620 (1984),[1] effectively overrules, *sub silentio*, these 30 years of Supreme Court doctrine. As a result of their reading of *Armco*, Taxpayers ask this court to strike down the state's B & O tax and refund all moneys allegedly improperly received under it since 1980.

Due to factual differences between the West Virginia tax, challenged in *Armco, see* 467 U.S. at 640, and the Washington tax, we do not believe the United States Supreme Court is requiring us to forge new commerce clause doctrine and disregard earlier decisions not overruled. We are unable to find such a command in the *Armco* decision. We are also troubled by the "free–rider" effect of Taxpayers' argument. As Taxpayers conceded at oral argument, their interpretation of *Armco* would force the State to forgo taxing a substantial number of in–state transactions where state services had admittedly been furnished. This implies that a state, to make up the deficit, must impose a double tax burden on in–state manufacturer–wholesalers.

### THE COMMERCE CLAUSE ISSUES

RCW 82.04.220 imposes, in general, a tax upon the privilege of engaging in business activities in Washington. The tax is measured by the application of rates against (1) the value of the products, (2) gross proceeds of sales, or (3) the gross income of the business, whichever is applicable. RCW 82.04.240 imposes a tax upon Washington manufacturers. RCW 82.04.270 taxes every person who sells products at wholesale in Washington. The disputed provision, RCW 82.04.440, provides that persons taxable under RCW 82.04-

---

[1]The decision has already provoked considerable comment. *See* Judson & Duffy, *An Opportunity Missed: Armco, Inc. v. Hardesty, A Retreat From Economic Reality in Analysis of State Taxes,* 87 W. Va. L. Rev. 723 (1985); Lathrop, *Armco—A Narrow and Puzzling Test for Discriminatory State Taxes Under the Commerce Clause,* Taxes 551 (Aug. 1985); Lightburn & McArthur, *U.S. Supreme Court Ignores Unitary Issue in Armco, Inc. Opting for Discriminatory Finding,* 3 J. of St. Tax'n 211 (1984); Note, *A Call for Internal Consistency Among State Taxing Schemes: Armco, Inc. v. Hardesty,* 38 Tax Law. 519 (1985); *Sup. Ct. Holds West Virginia's Wholesale Gross Receipts Tax Unconstitutional,* Tax Adviser 487 (Aug. 1984); *West Virginia Gross Receipts Tax Discriminates Against Interstate Commerce,* 3 J. of St. Tax'n 143 (1984).

.270 (wholesalers) shall not be taxed under RCW 82.04.240 (as local manufacturers). Thus, local manufacturers who wholesale their products strictly in Washington pay only the wholesaling tax. Further, a local extractor of a product who wholesales in Washington pays only the wholesaling tax, just as do out–of–state extractors. RCW 82.04.440. Under RCW 82.04.240, in–state manufacturers and extractors who sell their products out of state pay only the manufacturing tax, at a rate substantially identical to that paid by in–state wholesalers.

A state B & O tax must pass a 4–prong test to be valid under the commerce clause: (1) There must be a sufficient *nexus* or connection between the taxing state and the activities taxed; (2) the tax must be *fairly apportioned*; (3) the tax cannot *discriminate* against interstate commerce in favor of local commerce; and (4) the tax must be *fairly related* to the services provided by the taxing state. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977); *Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978). Appellants contend that Washington's B & O tax fails the last three prongs of this test. Because the heart of Taxpayers' complaint is that the statute fails the third prong, discrimination, that issue is addressed first. The second (fairly apportioned) and fourth (fairly related) prongs will be addressed together. Nexus is not at issue in this case, but is contested in the companion case. *See Tyler Pipe Indus., Inc. v. Department of Rev.,* 105 Wn.2d 318, 715 P.2d 123 (1986).

## A

### DISCRIMINATION

A state's taxing scheme is discriminatory under the commerce clause if it grants a direct commercial advantage to local businesses or subjects interstate commerce to a risk of multiple tax burdens, to which strictly local commerce is not exposed. *See Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599 (1977); *Gwin,*

*White & Prince, Inc. v. Henneford,* 305 U.S. 434, 83 L. Ed. 272, 59 S. Ct. 325 (1939). Any direct commercial advantage to local businesses inherent in Washington's B & O tax results from duplicative tax burdens; *e.g.,* the fact that strictly local businesses pay only one tax (either wholesale or manufacturing), while interstate businesses may possibly be subjected to one tax in this state and another tax at a different level of distribution in another state. Appellants contend that the recent Supreme Court decision, *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984), controls where there is a possibility of multiple–tax burdens and requires the invalidation of Washington's B & O tax.

In *Armco,* the Court invalidated West Virginia's gross receipts tax, under which local manufacturers were exempted from payment of the wholesale tax when they sold their locally manufactured products in West Virginia. Out–of–state manufacturers were required to pay the West Virginia wholesale tax when they sold their products in that state.

West Virginia's gross receipts tax is claimed to be the mirror image of Washington's present tax. West Virginia granted strictly local manufacturer–wholesalers an exemption from its wholesale tax; Washington grants strictly local manufacturer–wholesalers an exemption from its manufacturing tax. Besides providing an exemption to taxpayers who have already paid one state excise tax, the two tax systems are similar in that they are gross receipts taxes.[2] Their points of difference, however, have become more noteworthy after the *Armco* decision. The West Virginia tax exacted substantially different tax rates on manufacturing (.88 percent) and wholesaling activities (.27 percent), which precluded the Court from finding that the wholesal-

---

[2]The similarities were acknowledged by the Department when it was before the *Armco* Court. See *Armco,* 467 U.S. at 645. In oral argument before this court, however, the Department stated that the *Armco* opinion, with its emphasis on the rates and measures of the West Virginia tax, makes the differences between the two states' taxes more significant than their similarities.

ing tax compensated for the manufacturing tax. *Armco,* 467 U.S. at 642. By exacting substantially identical rates (.44 percent) for each activity, the Washington tax does not present the same obstacle to finding the taxes are compensatory.

In *Armco,* the Court held that West Virginia's tax facially discriminated against interstate commerce, 467 U.S. at 641, because it provided that "two companies selling . . . property at wholesale . . . will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it." *Armco,* 467 U.S. at 642. The Court further determined that under the West Virginia tax scheme the manufacturing and wholesaling were not "substantially equivalent events" which would allow for the imposition of compensating taxes. *Armco,* 467 U.S. at 643. It also noted that West Virginia did not allow for a proportionate reduction of its manufacturing tax when the manufactured goods were sold out of state, but did allow such a reduction when the goods were partly manufactured out of state. This was taken as evidence that the manufacturing tax was "not in part a proxy for the gross receipts tax imposed on Armco . . ." 467 U.S. at 643.

■ While the Court did not explain what it meant by "substantially equivalent events,"[3] its reliance on *Maryland v. Louisiana,* 451 U.S. 725, 758–60, 68 L. Ed. 2d 576, 101 S. Ct. 2114 (1981) indicates a criterion to guide us in determining when the selling and wholesaling taxes would be deemed compensatory and therefore substantially equivalent. In *Maryland v. Louisiana, supra,* Louisiana claimed its first–use tax compensated for a severance tax the State had imposed on local natural gas production. The first–use tax fell primarily on gas produced in the federal Outer Continental Shelf (OCS) and piped to Louisiana

---

[3]That the rate varies slightly for various types of businesses is not germane to the present issue. The variance comes from a subsequently enacted surtax. RCW 82.04.2904. Moreover, mathematical equality is not required. *General Am. Tank Car Corp. v. Day,* 270 U.S. 367, 373, 70 L. Ed. 635, 46 S. Ct. 234 (1926).

processing plants before being distributed to out–of–state consumers. The Court stated the 2–pronged criterion for determining compensatory taxes: (1) both taxes must be designed to meet the same ends; (2) local and interstate taxpayers similarly situated must receive equal treatment. 451 U.S. at 758–59.

The Louisiana tax failed on both prongs of the test. The purpose of the severance tax was to protect Louisiana's natural resources and compensate for their depletion. The first–use tax, however, could not be designed for that same purpose, "since Louisiana has no sovereign interest in being compensated for the severance of resources from the federally owned OCS land." 451 U.S. at 759. The Court also noted that Louisiana's first–use tax directly altered market forces in three impermissible ways: (1) certain local uses of OCS gas were exempted from the tax; (2) its credit system encouraged "natural gas owners involved in the production of OCS gas to invest in mineral exploration and development within Louisiana" rather than continue to pursue out–of–state, *e.g.*, OCS, development; (3) the credit system also assured that in–state end users of OCS gas would be insulated from the cost increases resulting from the first–use tax. 451 U.S. at 757.

None of the skewed market behavior due to the Louisiana tax appears to have developed in West Virginia. The *Armco* Court, however, found that the lack of symmetry in the West Virginia tax structure demonstrated that the selling and manufacturing taxes did not share the same end. 467 U.S. at 642–43. That West Virginia apportioned its manufacturing tax according to the percentage of in–state manufacturing a particular product represented, meant that West Virginia's selling tax could not be a substantially equivalent event for the manufacturing tax. In contrast, however, the flat rate character of the Washington taxes is evidence of the Legislature's intent to treat the two taxes as complementary and, therefore, compensatory.

■ Furthermore, the Washington B & O tax does not exhibit the infirmities that led the Court in *Maryland v.*

*Louisiana, supra,* to conclude the first–use tax could not be a compensatory tax for the state's severance tax. The Washington B & O tax is designed to tax the privilege of engaging in business activity *within* the state. RCW 82.04-.220. Both the selling and the manufacturing taxes are exacted to address the same state burdens attendant on granting such a privilege. All who engage in selling activity within Washington pay the selling B & O tax, while those in–state manufacturers who sell out of state are taxed on their manufacturing activity. Each Taxpayer is taxed only once, at a substantially uniform rate,[4] unlike West Virginia, for the privilege of doing business in Washington.

Nor does the tax exhibit a discriminatory impact. Unlike the Louisiana tax, the market forces are not altered by the incidence of the tax. In–state manufacturers selling out of state do not gain a tax advantage by shifting sales of their product to the local market. Similarly, out–of–state manufacturers selling in state gain no tax advantage by moving their manufacturing operations in state. Also in contrast with the Louisiana tax is the fact that in–state consumers are not insulated from the price effects of the tax on the goods.

We are further persuaded that the Washington tax is valid because it is conceptually identical to the pre–1968 New York stock transfer tax the Court endorsed in *Boston Stock Exch. v. State Tax Comm'n,* 429 U.S. 318, 50 L. Ed. 2d 514, 97 S. Ct. 599 (1977) which was in turn reaffirmed in *Armco,* 467 U.S. at 642. *Boston Stock Exchange* involved New York's attempt to keep the New York Stock Exchange by amending the stock transfer tax so that nonresidents who completed transfers entirely in New York paid a lower

[4]By way of example, the Court did suggest that sale and use taxes fell on substantially equivalent events. Other than representing activities farther downstream in the distribution chain, we do not see an economically significant difference between "sale and use" and "manufacturing and sale." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977) requires some relationship between a legal distinction and "economic realities." 430 U.S. at 279.

tax than would residents, and that transfers occurring entirely within New York could only be taxed to a maximum of $300, while there was no ceiling on other transfers. The tax was patently discriminatory and, unlike the B & O tax, was not part of a larger tax structure. The Court, however, spoke favorably of the unamended statute that taxed residents and nonresidents alike on one of several taxable stock transactions that could occur within the state. For both kinds of taxpayers, "the occasion of the tax was the occurrence of at least one taxable event in the State, the rate of tax was based solely on the price of the securities, and the total tax was determined by the number of shares sold." 429 U.S. at 322–23.

The *Armco* Court relied heavily upon the *Boston Stock Exchange* case as authority for striking down the West Virginia tax. *Boston Stock Exchange*'s favorable treatment of the pre–1968 amendments, *see* 429 U.S. at 330, and the apparent centrality of that holding to *Armco* requires harmonization of the two opinions. The incongruities between Taxpayers' reading of *Armco* and earlier, well established commerce clause cases, *see, e.g., Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946 (1981); *Complete Auto; Boston Stock Exchange,* makes us reluctant to extend *Armco* as Taxpayers urge. There is a disturbing formalism in their argument that manufacturing and wholesaling are never "substantially equivalent events." To read *Armco* thusly would foreclose analyzing a taxpayer's burden in light of both the structure of the relevant tax system and its effect on a single economic unit. Appellants' argument would force us to regard the gross receipts tax system as consisting of two separate taxes, manufacturing and selling, and to retreat from the *Complete Auto* "practical effects" test which *Armco* does not overrule or claim to modify. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977). To do so would be to ignore the "economic realities," 430 U.S. at 279, that a business unit frequently operates at several levels in the distribution chain and the costs

of those various operations come to bear on the single product which serves as the measure of taxation. *See also* Judson & Duffy, *An Opportunity Missed: Armco, Inc. v. Hardesty, A Retreat From Economic Reality in Analysis of State Taxes,* 87 W. Va. L. Rev. 723, 741 (1985); Lathrop, *Armco—A Narrow and Puzzling Test for Discriminatory State Taxes Under the Commerce Clause,* Taxes 551, 552, 559 (Aug. 1985).

Similarly, to avoid other incongruities posed by Taxpayers' arguments, we do not read *Armco* as requiring that the "internal consistency" requirement be applied to determine discrimination. The concept, "internal consistency," originated in the fair apportionment analysis of a multi–state net income tax case, *Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 169, 77 L. Ed. 2d 545, 103 S. Ct. 2933 (1983), and its applicability to gross receipts tax cases has been questioned. *See* Lathrop, at 557. Nevertheless, the concept seems to have been used only to determine whether Armco Inc., had to show actual harm once it had demonstrated the tax provision was facially discriminatory. *See* Judson & Duffy, 87 W. Va. L. Rev. at 739. As we have previously discussed, however, Washington's tax is not facially discriminatory. We note further that the Court, were it to have grafted the concept onto the discrimination prong, would have obscured the *Complete Auto* test by treating the "multiple taxation" apportionment prong as a discrimination problem. Reflecting its greater complexity, the "fair apportionment" prong has been subject to more generous standards than has the discrimination prong. *See, e.g., Container Corp.,* 463 U.S. at 170; *Moorman Mfg. v. Bair,* 437 U.S. 267, 278, 57 L. Ed. 2d 197, 98 S. Ct. 2340 (1978).

Because the West Virginia and Washington taxes differ significantly, we must reject appellants' argument and rely on the long history of the United States Supreme Court's treatment of this state's gross receipts tax as having withstood commerce clause challenges, *see Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978); *Standard Pressed*

*Steel Co. v. Department of Rev.,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975); *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964); *Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 659 P.2d 463, *appeal dismissed,* 464 U.S. 1013 (1983); *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 278 P.2d 305 (1954); *B.F. Goodrich Co. v. State,* 38 Wn.2d 663, 231 P.2d 325, *cert. denied,* 342 U.S. 876, 96 L. Ed. 659, 72 S. Ct. 167 (1951), as well as the general development of commerce clause analysis from *Complete Auto* to *Armco. See, e.g., Container Corp. of Am. v. Franchise Tax Bd., supra; Commonwealth Edison Co. v. Montana, supra; Maryland v. Louisiana, supra; Moorman Mfg. Co. v. Bair, supra.* Under these two lines of precedent, we do not find the tax discriminatory.

## B
### FAIR APPORTIONMENT; TAX FAIRLY RELATED
### TO SERVICES PROVIDED BY THE STATE

Taxpayers also claim that Washington's B & O tax violates the commerce clause because it is not fairly apportioned to reflect the amount of business conducted here, and it is not fairly related to the services rendered by Washington. As a result, Taxpayers complain that they are unfairly taxed upon more than 100 percent of their incomes. Hence, under the second and fourth prongs of the *Complete Auto* test, Taxpayers claim that interstate businesses are improperly subjected to multiple–tax burdens.

### 1. Fair Apportionment

Most apportionment cases have arisen in challenges to state income taxes where the income of a unitary multi–state business comes from a variety of tax jurisdictions. As Judson and Duffy note, a B & O tax on business activity within the state does not present the same difficulty in determining a nexus between business activity and the tax jurisdiction. Judson & Duffy, 87 W. Va. L. Rev. at 728. Moreover, even in the income tax cases, the Court has afforded legislatures a generous standard. In *Exxon Corp.*

*v. Wisconsin Dep't of Rev.,* 447 U.S. 207, 219–20, 65 L. Ed. 2d 66, 100 S. Ct. 2109 (1980), the Court looked only to whether there was "'a rational relationship between the income attributed to the State and the intrastate values of the enterprise.'" *See also, e.g., Container Corp. of Am. v. Franchise Tax Bd., supra.* Earlier, the *Moorman* Court had refused to require Iowa to employ the favored 3–factor test, urged here by Taxpayers, instead of its single–factor test for apportioning interstate commerce income. To disturb the formula, the taxpayers in *Moorman* would have to show by "'clear and cogent evidence' that the income attributed to the State is in fact 'out of all appropriate proportions to the business transacted . . . in that State' . . . or has 'led to a grossly distorted result' . . ." 437 U.S. at 274. The mere threat that income not generated in the state will be taxed under a formula does not make the formula constitutionally defective. 437 U.S. at 278. Congress, not the Court, must enact national uniform rules for the division of income if it finds duplicative taxation a problem. 437 U.S. at 279.

Washington's B & O tax has been held to be fairly apportioned in previous cases. *See Department of Rev. v. Association of Wash. Stevedoring Cos., supra; Standard Pressed Steel Co. v. Department of Rev., supra; Chicago Bridge & Iron Co. v. Department of Rev., supra.* Nonetheless, Taxpayers urge that, under *Armco,* the tax must now pass the "internal consistency" test articulated in *Container Corp. of Am. v. Franchise Tax Bd., supra,* and cited in *Armco.* In applying that test, the court must hypothesize that every jurisdiction has adopted a tax identical to the tax in question; the result must be that no more than 100 percent of a single business's income is taxed by one state.

We agree with the Department that the "internal consistency" test articulated in *Container Corp.* and *Armco* does not apply to the determination whether the B & O tax is fairly apportioned. This is because Washington does not tax the income of a unitary business, but rather taxes only the privilege of manufacturing or selling within the state.

Thus, respondent urges that Washington's tax is apportioned by "allocation"; that is, the tax is applied only to the value of products manufactured in Washington or to the gross proceeds of sales in Washington.

■ We do not read the *Armco* opinion to apply its "internal consistency" test to the question of whether a state gross receipts tax is fairly apportioned. We believe that it does not apply not only because of the appeal of the Department's argument, but because the *Armco* Court said nothing about the status of *Department of Rev. v. Association of Wash. Stevedoring Cos.*, 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978). If the "internal consistency" requirement applied to the fair apportionment prong, *Washington Stevedoring* should be overruled for requiring a showing of actual harm to make out unfair apportionment. 435 U.S. at 746 & n.16. Further, speaking specifically of the tax challenged here, the Court said, "[w]hen a general business tax levies only on the value of services performed within the State, the tax is properly apportioned and multiple burdens logically cannot occur." 435 U.S. at 746–47.

## 2. Fairly Related

■ The *Armco* Court did not address the "fairly related to state services" prong. The controlling case is *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 69 L. Ed. 2d 884, 101 S. Ct. 2946 (1981). Certain Montana coal producers and their out–of–state customers argued that they should be permitted to show that the state's high coal severance tax was not fairly related to state services provided. The Court refused to view the fair relation test as a cost–benefit analysis of the taxes paid and services received. The test is basically a nexus test, with "the additional limitation that the *measure* of the tax must be reasonably related to the extent of the [taxpayer's] contact" with the state. 453 U.S. at 626. The Court declined to determine what a reasonable measure might be because (1) no usable legal test could adequately reflect the varied considerations that

"inform a decision about an acceptable rate or level of state taxation", 453 U.S. at 628; and, hence, (2) this is a question more suited to the political process. The taxpayer's "substantial privilege of mining coal" provided sufficient nexus and the only benefit the state needed to show was that the taxpayer enjoyed the "privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes." 453 U.S. at 629. *See also Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 60 L. Ed. 2d 336, 99 S. Ct. 1813 (1979).

Manufacturing, or wholesaling, would also appear to be privileges comparable to mining so that the nexus requirement is sufficiently met in the present case. Despite any warts Washington may suffer, the State can show that ours is "an organized society." While local manufacturer–sellers enjoy "two activities for the price of one", interstate businesses cannot, under this prong, apply a cost–benefit analysis to show how they have been short changed.

We believe the Washington B & O tax continues to meet commerce clause standards. We do not believe *Armco* requires the result urged by appellants and can be reconciled with compelling precedent not overruled in *Armco* and with scholarly commentary. We also believe the controlling facts in *Armco* differ significantly from those before us. The trial court is affirmed.

DOLLIVER, C.J., and BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.