[No. 37516-8-II. Division Two. August 4, 2009.]

LAMTEC CORPORATION, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Philip A. Talmadge* (of *Talmadge/Fitzpatrick*) and *Jeffrey D. Dunbar* and *E. Ross Farr* (of *Ogden Murphy Wallace, PLLC*), for appellant.

*Robert M. McKenna, Attorney General*, and *Peter B. Gonick, Assistant*, for respondent.

¶1 BRIDGEWATER, J. — Lamtec, a New Jersey corporation, appeals from a summary judgment in favor of the Washington State Department of Revenue (Department) and its imposition of business and occupation (B&O) taxes. We hold that Lamtec's Washington customers did not receive the products in New Jersey even though the products were shipped free on board (F.O.B.)[1] Flanders, New Jersey, because the common carriers had no authority to accept, reject, or inspect on behalf of the Washington customers. We also hold that Lamtec's activities in Washington establish a nexus for B&O tax purposes, even though they do not have an office in the state and do no direct sales, because it visited customers to establish and maintain their market. We affirm.

## FACTS

¶2 Lamtec is a New Jersey corporation that manufactures vapor barriers and insulation facings. It manufactures its products, including insulation rolls, duct wrap, duct board, and pipe insulation, at its Flanders, New Jersey, headquarters. Lamtec sells these products wholesale to customers throughout the country, primarily by telephone orders that customers place to its headquarters in New Jersey. It employs approximately 120 employees in New Jersey and one employee in Ohio.

¶3 Lamtec does not have any employees, property, or inventory in Washington. Rather, it ships its wholesale products from its New Jersey manufacturing plant to its Washington customers. The terms are F.O.B. Flanders,

---

[1] "F.O.B." means "without charge for delivery to and placing on board a carrier at a specified point." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 906 (2002).

New Jersey, using a common carrier, with the title passing to the Washington customer at the time of shipment. The Washington customers bear the risk of loss and are responsible for the cost of shipment. There is no evidence that Lamtec's Washington customers or the common carrier inspects the products prior to shipment from New Jersey to Washington. Lamtec maintains, however, that its Washington customers inspect its manufacturing plant to ensure Lamtec's products meet their needs.

¶4 In an effort to maintain its existing customers and encourage continued business, Lamtec employees visit, at most, 12 longstanding Washington customers. During 1997 through 2003, the tax period at issue here, three Lamtec employees each visited existing Washington customers approximately two to three times per year. These employees held titles such as "sales manager," "vice president of sales and marketing," and generally, "sales representatives." Clerk's Papers at 297, 334, 370.

¶5 Although Lamtec maintains that these employees neither solicited nor accepted individual orders during their visits to Washington, it admits that its employees engaged in efforts to maintain Lamtec's Washington market. During visits to the Washington customers, Lamtec employees provided information, listened to concerns about and answered questions concerning Lamtec products, participated in telephone calls that the customers placed to Lamtec's technical and customer service departments in New Jersey, fielded questions concerning potential price increases and new products, and maintained general client relations.

¶6 In 2004, the Department contacted Lamtec in regard to its wholesale sales to Washington. Subsequently, the Department concluded that Lamtec's sales activities between 1997 and June 30, 2004, were subject to the State's taxing authority. Accordingly, the Department assessed a B&O tax on Lamtec's wholesale sales activities in Washington for 1997 through June 30, 2004. During this time, Lamtec maintained sales between $1.1 million and $1.4 million in Washington. The Department determined that

Lamtec owed $45,599.76 in back taxes, $11,399.96 in delinquent penalties, and $14,556.40 in assessment interest and penalties. The total amount that Lamtec owed was $71,556.12.

¶7 Lamtec protested and appealed the assessment to the department Appeals Board (Board). The Board affirmed the assessment. Lamtec then paid the assessment and filed a refund claim in Thurston County Superior Court.[2] On cross-motions for summary judgment, the superior court granted summary dismissal in the Department's favor. Lamtec now appeals.

## ANALYSIS

### I. Standard of Review

¶8 We review summary judgment orders de novo, engaging in the same inquiry as the trial court and viewing the facts and inferences in the light most favorable to the nonmoving party. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005). Summary judgment is proper only when there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Berrocal*, 155 Wn.2d at 590. Here, Lamtec agrees that there are no genuine issues of material fact. But it contends that the trial court should have granted summary judgment in its favor.

¶9 Lamtec makes both a statutory argument and a constitutional argument. It contends that under the Department's rules set forth in WAC 458-20-193(7), Washington's B&O tax does not apply to its wholesale sales to Washington customers. Lamtec also contends that the Department's imposition of B&O taxes on it offends the commerce clause of the United States Constitution. Alternatively, Lamtec argues that it is exempt from B&O taxes

---

[2] Lamtec incorrectly asserts that interest continues to run on the assessment. Because Lamtec paid the assessment, as required by RCW 82.32.180 to file a refund claim in superior court, no interest is accruing. *See* RCW 82.32.150.

because its Washington activities were dissociated from its Washington sales. Lamtec's arguments lack merit.

## II. B&O Tax

¶10 A B&O tax is an excise tax that a jurisdiction imposes for " 'the privilege of doing business' " in that particular jurisdiction. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 39, 156 P.3d 185 (2007) (quoting 1B KELLY KUNSCH ET AL., WASHINGTON PRACTICE: METHODS OF PRACTICE § 72.7, at 452 (1997)), *cert. denied*, 128 S. Ct. 1224 (2008); RCW 82.04.220.[3] In adopting Washington's B&O tax scheme, " 'the legislature intended to impose the business and occupation tax upon virtually all business activities carried on within the state' and to 'leave practically no business and commerce free of . . . tax.' " *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 149, 3 P.3d 741 (2000) (alteration in original) (citations omitted) (quoting *Time Oil Co. v. State*, 79 Wn.2d 143, 146, 483 P.2d 628 (1971); *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 175, 500 P.2d 764 (1972)). Indeed, RCW 82.04.270 authorizes the state to impose the B&O tax "[u]pon every person engaging within this state in the business of making sales at wholesale."

¶11 The Department has promulgated specific rules to address circumstances under which it applies the B&O tax to interstate sales of tangible property. *See* WAC 458-20-193(1).[4] One such circumstance is when goods originating outside of Washington are received by a purchaser in Washington and the out-of-state seller has a nexus with

---

[3] RCW 82.04.220 reads in pertinent part:

There is levied and shall be collected from every person a tax for the act or privilege of engaging in business activities.

[4] WAC 458-20-193(1) reads in pertinent part:

This section explains Washington's B&O tax and retail sales tax applications to interstate sales of tangible personal property. It covers the . . . inbound sales of goods originating outside this state to persons in this state.

Washington. WAC 458-20-193(7).[5] Here, Lamtec maintains that both elements are missing: It did not have a nexus with Washington, nor did its customers receive Lamtec goods in Washington.

## A. Receipt of Goods

¶12 Lamtec contends that its Washington customers received its goods in New Jersey and not in Washington because it ships the goods F.O.B. Flanders, New Jersey. This reasoning lacks merit in the context of B&O taxes.

¶13 Lamtec cites several cases in which courts have determined that the parties' commercial contract established where, for tax purposes, the sale is made. *See, e.g.*, *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 64 S. Ct. 1023, 88 L. Ed. 1304 (1944); *McGoldrick v. Berwind-White Coal Mining Co.*, 309 U.S. 33, 60 S. Ct. 388, 84 L. Ed. 565 (1940); *Weyerhaeuser Co. v. Dep't of Revenue*, 106 Wn.2d 557, 723 P.2d 1141 (1986). But these cases are not relevant to the issue here because they address the propriety of state and local sales and use taxes rather than B&O taxes. *See Ford Motor*, 160 Wn.2d at 44.

¶14 In *McLeod*, for example, Arkansas sought to impose a *sales tax* on a sale completed in Tennessee but delivered in Arkansas. *McLeod*, 322 U.S. at 328. The United States Supreme Court held that Arkansas could not apply a *sales tax* to a personal property sale consummated outside the state. *McLeod*, 322 U.S. at 331. In rendering its decision, the *McLeod* court specifically distinguished a *sales tax* from other types of taxes, such as use taxes. *McLeod*, 322 U.S. at 330-32. Likewise, the issue in *McGoldrick* involved a *sales tax*. *McGoldrick*, 309 U.S. at 41. There, the Supreme Court

---

[5] WAC 458-20-193(7) reads in pertinent part:

Washington does not assert B&O tax on sales of goods which originate outside this state unless the goods are received by the purchaser in this state and the seller has nexus. There must be both the receipt of the goods in Washington by the purchaser and the seller must have nexus for the B&O tax to apply to a particular sale. The B&O tax will not apply if one of these elements is missing.

upheld the imposition of a *sales tax* on transactions made by a Pennsylvania corporation that maintained its sales office in New York City, took its contracts in New York City, and made actual deliveries in New York City. *McGoldrick*, 309 U.S. at 44. The same is true of *Weyerhaeuser*, where the issues involved the Department's imposition of a retail *sales tax* on Weyerhaeuser. *Weyerhaeuser*, 106 Wn.2d at 558-59.

¶15 Lamtec's reliance on these cases is unfounded because sales tax is inherently different from B&O tax. *See Ford Motor*, 160 Wn.2d at 44. In *Ford Motor*, the Washington Supreme Court emphasized this inherent difference:

> Looking at the place of sale is proper in the sales tax context because the incident of tax in that situation is the individual transaction. Such is not the case where a B&O tax is involved because, as we have observed above, the B&O tax is imposed upon activities associated with the privilege of doing business in the taxing jurisdiction.

*Ford Motor*, 160 Wn.2d at 44. Not only is this language instructive, but the context of the *Ford Motor* case is instructive. Ford challenged the imposition of B&O taxes by the cities of Seattle and Tacoma on wholesale sales by Ford automotive dealers in those cities. *Ford Motor*, 160 Wn.2d at 41. The Supreme Court held that under the municipal codes, Ford was engaging in the business of wholesaling in both Seattle and Tacoma. *Ford Motor*, 160 Wn.2d at 42-43.

¶16 In deciding *Ford*, the Supreme Court rejected Ford's argument that the terms of its contracts controlled the location of sale. *Ford Motor*, 160 Wn.2d at 43. The court held that the cities' imposition of B&O tax was proper because Ford engaged in business under the municipal codes when it solicited sales, performed warranty work, and met with customers and potential customers. *Ford Motor*, 160 Wn.2d at 42, 44.

¶17 Like the municipalities in *Ford Motor*, Washington State imposes B&O taxes on sellers for the privilege of engaging in business activities in our state. RCW 82.04.220. Also like *Ford Motor*, Lamtec's shipping con-

tracts do not control the location of sale for purposes of applying B&O taxes. *See Ford Motor,* 160 Wn.2d at 43, 44. It is appropriate for the Department to impose B&O taxes on persons engaging in business activities in Washington. *See* RCW 82.04.270. And again, the first prong of the test requires that goods originating outside of Washington must be received by a purchaser inside of Washington. WAC 458-20-193(7).

¶18 The Department's promulgated rules address receipt of goods from out-of-state sellers:

> Delivery of the goods to a freight consolidator, freight forwarder or for-hire carrier located outside this state merely utilized to arrange for and/or transport the goods into this state is not receipt of the goods by the purchaser or its agent unless the consolidator, forwarder or for-hire carrier has express written authority to accept or reject the goods for the purchaser with the right of inspection.

WAC 458-20-193(7)(a).

¶19 Lamtec implies that its business activities fall within the situations categorized in WAC 458-20-193(7)(a), but it argues that the regulation overreaches because it requires more than the Uniform Commercial Code (UCC) requires in terms of receipt.

¶20 UCC provisions may govern transfer of title for the purpose of sales. *See Weyerhaeuser,* 106 Wn.2d at 562-63 (UCC applies to the terms of the parties' transportation agreement to determine where a sale is made and, from that determination, what *sales tax* classification follows.). But the UCC provisions regarding ownership or the passage of title of goods do not determine whether Washington's B&O tax applies. *See Ford Motor,* 160 Wn.2d at 43-44; *see also Gen. Motors Corp. v. State,* 60 Wn.2d 862, 876, 376 P.2d 843 (1962) (upholding the imposition of B&O tax on an out-of-state company that shipped merchandise F.O.B., reasoning that "the substance of each transaction occurs in Washington where the customer is located"). Furthermore, WAC 458-20-193 does not purport to interpret or apply

Washington's UCC provisions. On the contrary, it interprets and applies Washington's taxing statutes.

¶21 Here, Lamtec has provided no evidence that the common carriers have express written authority to accept or reject Lamtec goods for its Washington customers. It has provided no evidence that the common carriers have the right of inspection. In fact, there is deposition testimony from a Lamtec employee indicating that the common carriers did not have authority to inspect the Lamtec products for the Washington customers. Accordingly, given the evidence provided, the superior court properly determined that under WAC 458-20-193, Lamtec's Washington customers receive Lamtec goods in Washington.

## B. Nexus with Washington

¶22 Next, Lamtec claims that its activities within Washington do not satisfy the statutory nexus requirement under WAC 458-20-193(7), which parallels the rule for determining nexus under federal commerce clause analysis. Lamtec makes a constitutional nexus argument. It contends that the Department violated the commerce clause of article I, section 8 of the United States Constitution when it imposed the B&O tax on Lamtec. This contention lacks merit.

¶23 The United States Supreme Court has developed a four-part test to determine whether a state tax on interstate commerce meets the constitutional requirements of the federal commerce clause. A state tax is valid if (1) there is a sufficient nexus or connection between the state and the activities taxed, (2) the tax is fairly apportioned, (3) the tax does not discriminate against interstate commerce in favor of local commerce, and (4) the tax is fairly related to state-provided services. *Ford Motor*, 160 Wn.2d at 48 (quoting *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977)). If a taxing scheme fails any one of these requirements, it is invalid. *Ford Motor*, 160 Wn.2d at 48. But it is " 'not the purpose of

the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business.' " *Gen. Motors Corp. v. Washington*, 377 U.S. 436, 439, 84 S. Ct. 1564, 12 L. Ed. 2d 430 (1964) (quoting *W. Live Stock v. Bureau of Revenue*, 303 U.S. 250, 254, 58 S. Ct. 546, 82 L. Ed. 823 (1938)), *overruled on other grounds by Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987) (*Tyler Pipe* II). Here, Lamtec contends that the Department's imposition of B&O taxes offends the federal commerce clause because it does not have a sufficient nexus with Washington.

¶24 A tax passes constitutional muster only if it is applied to " 'an activity with a substantial nexus with the taxing State.' " *Quill Corp. v. North Dakota*, 504 U.S. 298, 311, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992) (quoting *Complete Auto*, 430 U.S. at 279). In *Quill*, the United States Supreme Court reversed an opinion of the North Dakota Supreme Court that permitted a tax on a mail-order business with no physical presence in the state. *Quill*, 504 U.S. at 301-02. Confirming the "bright-line" rule articulated in *National Bellas Hess, Inc. v. Department of Revenue*, 386 U.S. 753, 758, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967), the *Quill* Court held that a use tax is impermissible where the seller's only connection with a particular state is orders placed and merchandise delivered through a common carrier or the United States mail; a seller must have a physical presence in a state to satisfy the commerce clause. *Quill*, 504 U.S. at 301. As the United States Supreme Court has observed, " 'the crucial factor governing nexus is whether the activities performed in [the] state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in [the] state for the sales.' " *Tyler Pipe* II, 483 U.S. at 250 (quoting *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 105 Wn.2d 318, 323, 715 P.2d 123 (1986) (*Tyler Pipe* I), *overruled on other grounds by Tyler Pipe* II, 483 U.S. 232); *see also* WAC 458-20-193(2)(f) (adopting the *Tyler Pipe* test for nexus).

¶25 Lamtec's primary argument is that it does not have a substantial nexus with Washington because it does not maintain a physical presence in the state. Relying on *Quill*, it contends that to show substantial nexus, the Department must establish that Lamtec has a physical presence akin to " 'a small sales force, plant, or office' " within the taxing state. Br. of Appellant at 15 (quoting *Quill*, 504 U.S. at 315).

¶26 In *Quill*, the United States Supreme Court determined that, in the context of sales and use taxes, an entity must be physically present in the taxing jurisdiction to establish the constitutional requisite "substantial nexus." *Quill*, 504 U.S. at 311. Since *Quill*, courts have developed a split in authority as to whether the Supreme Court's holding was limited to sales and use taxes. *See, e.g.*, *A&F Trademark, Inc. v. Tolson*, 167 N.C. App. 150, 605 S.E.2d 187, 193-96 (2004) (holding that North Carolina may impose corporate franchise and income taxes on companies not physically present in North Carolina), *cert. denied*, 546 U.S. 821 (2005); *J.C. Penney Nat'l Bank v. Johnson*, 19 S.W.3d 831, 838-39 (Tenn. Ct. App. 1999) (holding that Tennessee may not impose franchise and excise tax on a company not physically present in Tennessee), *cert. denied*, 531 U.S. 927 (2000).

¶27 A close reading of *Quill* reveals that its language supports those courts that have limited *Quill* to cases involving sales and use taxes. Plainly stated, the *Quill* Court did not attempt to equate the substantial nexus requirement with a universal physical presence requirement. *See Quill*, 504 U.S. at 314 ("[W]e have not, in our review of other types of taxes, articulated the same physical-presence requirement that *Bella Hess* established for sales and use taxes."). On the contrary, the Supreme Court carefully and specifically limited its language to a discussion of sales and use taxes. *See Quill*, 504 U.S. at 316 (acknowledging the benefits of imposing bright-line rule "in the area of sales and use taxes"). Therefore, the *Quill* language does not support Lamtec's proposition that a physical presence is required to establish substantial nexus

in the context of B&O taxes. *See Gen. Motors Corp. v. City of Seattle*, 107 Wn. App. 42, 55, 25 P.3d 1022, *review denied*, 145 Wn.2d 1014 (2001), *cert. denied*, 535 U.S. 1056 (2002).

¶28 Indeed, Washington case law supports this reading of *Quill*. In *General Motors*, Division One of this court expressly declined to extend the physical presence requirement to the context of B&O taxes. *Gen. Motors*, 107 Wn. App. at 55. There, the court affirmed Seattle's imposition of its B&O tax on General Motors and Chrysler Corporation, reasoning that the companies engaged in the business of making wholesale sales within Seattle city limits. Both General Motors and Chrysler received orders for autos and parts via computer and shipped those goods F.O.B. factory via common carrier. *Gen. Motors*, 107 Wn. App. at 46. Although neither company engaged in direct selling activities in the city, the court found that the companies' other business activities were intended to maintain a share of the market within Seattle and thus sufficient to subject them to Seattle's B&O tax. *Gen. Motors*, 107 Wn. App. at 48. The companies' business activities included national advertising directed at Seattle; marketing and selling warranties; sending sales, service, and parts representatives on a monthly basis to visit Seattle dealers; and requiring dealers to use large, permanent signage. *Gen. Motors*, 107 Wn. App. at 46-47.

¶29 The Washington State Supreme Court denied review in *General Motors*, but it later expressly approved the *General Motors* reasoning in a subsequent case, *Ford Motor*. The *Ford Motor* court affirmed B&O taxes imposed on Ford by Seattle and Tacoma. It rejected Ford's argument that the B&O tax was inappropriate since it did not engage in any direct selling in the cities. *Ford Motor*, 160 Wn.2d at 44-45.[6]

¶30 Moreover, the United States Supreme Court approved Washington's substantial nexus analysis in *Tyler*

---

[6] Ford did not challenge that its activities within the cities satisfied the substantial nexus prong of *Complete Auto Transit* test; thus, the *Ford* court did not reach that issue. *Ford Motor*, 160 Wn.2d at 49.

*Pipe. See Tyler Pipe* II, 483 U.S. at 251. Writing for the majority, Justice Stevens held that Tyler Pipe had a sufficient nexus with Washington because Tyler's " 'sales representatives perform[ed] any local activities necessary for maintenance of Tyler Pipe's market and protection of its interests.' " *Tyler Pipe* II, 483 U.S. at 251 (quoting *Tyler Pipe* I, 105 Wn.2d at 321). In other words, the business activities performed on Tyler's behalf in Washington were " 'significantly associated with [its] ability to establish and maintain a market in this state for the sales.' " *Tyler Pipe* II, 483 U.S. at 250 (quoting *Tyler Pipe* I, 105 Wn.2d at 323).

¶31 Here, Lamtec's business activities in Washington significantly contributed to its ability to establish and maintain its market in the state. Given Lamtec's business strategy—maintaining long-term relationships with a small number of customers—its in-person customer visits were critical to maintaining its existing Washington customers. And, as the Department suggests, when one is maintaining a customer relationship, it is establishing its market for future sales. While in Washington, Lamtec employees provided information, listened to concerns about and answered questions concerning Lamtec products, participated in telephone calls that the customers placed to Lamtec's technical and customer service departments in New Jersey, fielded questions concerning potential price increases and new products, and maintained general client relations.

¶32 Lamtec's distinction that its employees solicited no sales during their visits to Washington is of no consequence. *See Tyler Pipe* II, 483 U.S. at 249; *Gen. Motors*, 107 Wn. App. at 52 (stating that substantial nexus has never turned on whether an out-of-state company engages in direct selling activities); *see also In re Orvis Co.*, 86 N.Y.2d 165, 654 N.E.2d 954, 630 N.Y.S. 2d 680, *cert. denied*, 516 U.S. 989 (1995) (holding that there is no requirement under *Quill* and commerce clause jurisprudence requiring that an out-of-state company's sales representative be engaged in solicitation of sales or in sales transactions to satisfy the

substantial nexus requirement). Likewise, Lamtec's distinction that it has no permanent employees in Washington is of no consequence. The test is whether Lamtec's in-state activities were significantly associated with its ability to establish and maintain its market in Washington, not whether it employed people within the state. *See Tyler Pipe* II, 483 U.S. at 250; *see also Orvis*, 86 N.Y.2d at 178, 180 (finding a sufficient nexus based on the " 'slightest presence' " of an out-of-state corporation's out-of-state employees visiting as many as 19 wholesale customers in the state an average of four times per year (quoting *Nat'l Geographic Soc'y v. Cal. Bd. of Equalization*, 430 U.S. 551, 556, 97 S. Ct. 1386, 51 L. Ed. 2d 631 (1977))).

¶33 Finally, Lamtec's citation to *City of Tacoma v. Fiberchem, Inc.*, 44 Wn. App. 538, 722 P.2d 1357, *review denied*, 107 Wn.2d 1008 (1986), is misguided. In *Fiberchem* we relied on a state constitutional due process law to resolve the challenged intrastate commerce issues, which did not implicate the federal constitutional commerce clause. *Fiberchem*, 44 Wn. App. at 542. Likewise, Lamtec's reliance on *KMS Financial Services, Inc. v. City of Seattle*, 135 Wn. App. 489, 146 P.3d 1195 (2006), *review denied*, 161 Wn.2d 1011 (2007), is equally misguided. The issue in *KMS* was whether Seattle's imposition of its B&O tax on KMS was fairly apportioned, sufficient to meet constitutional requirements of the federal commerce clause. *KMS*, 135 Wn. App. at 504. The nexus prong of the *Complete Auto* test was not at issue, as it is here. Thus, *KMS* provides no guidance.

¶34 In sum, based on the undisputed evidence presented, the superior court correctly determined that Lamtec has a substantial nexus with Washington. Its employees' activities within the state are significantly associated with its ability to establish and maintain its market, particularly in light of Lamtec's business model that entails maintaining a small number of high-volume customers long-term. *See Tyler Pipe* II, 483 U.S. at 250.

¶35 Because there are no genuine issues of material fact as to whether Lamtec has a sufficient nexus with Washington, and Lamtec's customers receive Lamtec products in Washington, the trial court properly granted summary dismissal in the Department's favor.

## III. Dissociation

¶36 Nevertheless, Lamtec contends that even if we find its goods were received in Washington and it has a substantial nexus with Washington, Lamtec's Washington activities are not significantly associated in any way with sales to the state. Thus, it concludes that the Department is barred from imposing B&O taxes under WAC 458-20--193(7)(c). This argument is not convincing.

¶37 Lamtec's "disassociation" argument significantly overlaps with its substantial nexus argument. It relies on *Norton Co. v. Department of Revenue*, 340 U.S. 534, 71 S. Ct. 377, 95 L. Ed. 517 (1951), to support its argument that its activities in Washington were " 'not significantly associated in any way with the sales into this state.' " Br. of Appellant at 19 (quoting WAC 458-20-193(7)(c)).

¶38 In *Norton*, the United States Supreme Court articulated the following test:

> [W]hen, as here, the corporation has gone into the State to do local business by state permission and has submitted itself to the taxing power of the State, it can avoid taxation on some [state] sales only by showing that particular transactions are dissociated from the local business and interstate in nature. The general rule, applicable here, is that a taxpayer claiming immunity from tax has the burden of establishing his exemption.

*Norton*, 340 U.S. at 537. Applying this test to the facts presented here, Lamtec has not met its burden of proving that its transactions within Washington are dissociated from its business. Moreover, Lamtec's argument that *Norton* compels this court to find that its Washington

activities were dissociated is not well taken. *Norton* is distinguishable.

¶39 In *Norton*, the United States Supreme Court held that only when a nonresident's activities are in no way associated with the business taxed is the business immune from taxation. *Norton*, 340 U.S. at 537. The Supreme Court found no nexus for orders sent directly to an out-of-state manufacturer, filled there, and shipped directly to the customer, even though there was a sales office in the taxing state. The Supreme Court reached this conclusion because the taxpayer established a complete absence of any connection between the local office and the interstate sales. *Norton*, 340 U.S. at 539. In other words, for that category of orders where the buyer ordered directly from the company's out-of-state headquarters and the goods were shipped directly to the buyer, the company engaged in no in-state activities associated with those orders. *See Norton*, 340 U.S. at 537-38. There was no customer relationship between the in-state customers and in-state operations. *Norton*, 340 U.S. at 538.

¶40 This is not the case here. As we discussed above, Lamtec sends its employees to visit Washington to maintain its customers in the state. Lamtec's activities in Washington are not separate and independent from its sales to its Washington customers. Thus, Lamtec has failed to establish that its Washington activities are dissociated from its Washington sales.

¶41 Affirmed.

ARMSTRONG and HUNT, JJ., concur.

Review granted at 168 Wn.2d 1009 (2010).