246 P.3d 788 (2011)
LAMTEC CORPORATION, Petitioner,
v.
DEPARTMENT OF REVENUE, State of Washington, Respondent.
No. 83579-9.
Supreme Court of Washington, En Banc.
Argued September 16, 2010.
Decided January 20, 2011.
*790 Leslie R. Pesterfield, Jeffrey Duane Dunbar, E. Ross Farr, Ogden Murphy Wallace, P.L.L.C., Seattle, WA, Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, for Petitioner.
Peter B. Gonick, Washington Attorney General, Olympia, WA, for Respondent.
CHAMBERS, J.
¶ 1 Lamtec Corporation, based in New Jersey, manufactures insulation and vapor barriers. It sells its products nationwide and did more than $1.1 million in business in Washington State each year during the seven years at issue here. Lamtec has no offices or agents permanently in Washington but regularly sends representatives to visit customers. In 2004, the Department of Revenue (Department) determined that Lamtec's Washington sales were subject to Business and Occupation (B & O) tax. Lamtec argues that under the federal commerce clause it had an insufficient nexus to Washington to be subject to the State's B & O tax. Lamtec paid under protest and then filed a refund claim in superior court. The trial court dismissed Lamtec's action, and the Court of Appeals affirmed. Lamtec Corp. v. Dep't of Revenue, 151 Wash.App. 451, 215 P.3d 968 (2009). We affirm the Court of Appeals.

FACTS
¶ 2 Lamtec manufactures its products at its facility in New Jersey and has no permanent facilities, office, address, phone number, or employees in Washington. It sells its products wholesale to customers who place orders by telephone. Washington customers ordered over $9 million worth of Lamtec's products from 1997 to 2003. About two or three times a year during the tax period at issue, three Lamtec sales employees visited major customers in Washington. During those visits, the employees did not solicit sales directly, but they answered questions and provided information about Lamtec products. The trial court found that approximately 50-70 such visits occurred during the period at issue, and the purpose of these visits was to maintain Lamtec's Washington market.
¶ 3 In May 2004, the Department requested a statement from Lamtec regarding its Washington business activities. Based on the company's response, the Department required Lamtec to register and submit a Master Business License Application. The company's application listed its estimated gross annual income in the state as "$100,001 and above." Clerk's Papers (CP) at 427. The Department then assessed $45,599.76 in tax, $15,959.94 in penalties, and $9,996.42 in interest.[1] Lamtec unsuccessfully petitioned the Department for a correction.[2] Lamtec paid the tax under protest and challenged the tax in Thurston County Superior Court. Both Lamtec and the Department moved for summary judgment. The court granted the Department's motion, finding a substantial nexus between the taxed activities and Washington, and it concluded that the commerce clause does not prevent Washington from imposing the tax. Lamtec unsuccessfully appealed to the Court of Appeals on several issues[3] and petitioned for review *791 only on the substantial nexus question. We granted review. Lamtec Corp. v. Dep't of Revenue, 168 Wash.2d 1009, 226 P.3d 782 (2010).

STANDARDS OF REVIEW
¶ 4 This case raises questions of law on appeal from summary judgment. Our review is de novo. Dreiling v. Jain, 151 Wash.2d 900, 908, 93 P.3d 861 (2004) (citing Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994)). We interpret statutes so as to implement the legislature's intent. Ski Acres, Inc. v. Kittitas County, 118 Wash.2d 852, 856, 827 P.2d 1000 (1992) (citing In re Bale, 63 Wash.2d 83, 86, 385 P.2d 545 (1963)). When its meaning is in doubt, a tax statute "must be construed most strongly against the taxing power and in favor of the taxpayer." Ski Acres, 118 Wash.2d at 857, 827 P.2d 1000 (citing City of Puyallup v. Pac. Nw. Bell Tel. Co., 98 Wash.2d 443, 448, 656 P.2d 1035 (1982)). Taxes are presumed valid. However, while we interpret statutes to give effect to legislative intent and review summary judgments de novo, the taxpayers have the burden of proving they are factually exempt. RCW 82.32.180 ("At trial, the burden shall rest upon the taxpayer to prove that the tax as paid by the taxpayer is incorrect, either in whole or in part, and to establish the correct amount of the tax."); Gen. Motors Corp. v. Washington, 377 U.S. 436, 441, 84 S.Ct. 1564, 12 L.Ed.2d 430 (1964) ("`a taxpayer claiming immunity from a tax has the burden of establishing his exemption.'" (quoting Norton Co. v. Dep't of Revenue, 340 U.S. 534, 537, 71 S.Ct. 377, 95 L.Ed. 517 (1951))).

ANALYSIS
¶ 5 Washington imposes a gross receipts tax (B & O tax) "for the act or privilege of engaging in business activities" on "every person that has a substantial nexus with this state." Former RCW 82.04.220 (1961);[4]see also Ford Motor Co. v. City of Seattle, 160 Wash.2d 32, 39, 156 P.3d 185 (2007). A tax on an out-of-state corporation must satisfy both the requirements of the due process clause of the Fourteenth Amendment and the commerce clause. Quill Corp. v. North Dakota, 504 U.S. 298, 305, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). The due process inquiry considers whether the corporation has sufficient contacts with the taxing state such that imposing the tax "does not offend `traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Although Lamtec calls our attention to a case where the Court of Appeals struck down a B & O tax assessment on due process grounds, it does not allege such a violation here. Pet'r's Suppl. Br. at 11-16 (citing City of Tacoma v. Fiberchem, Inc., 44 Wash.App. 538, 722 P.2d 1357 (1986)).
¶ 6 Instead, Lamtec argues that the assessment violates the "negative" or "dormant" commerce clause. The dormant commerce clause "prevents state regulation of interstate commercial activity even when Congress has not acted . . . to regulate that activity" but does not "relieve those engaged in interstate commerce from their just share of state tax burden." Black's Law Dictionary 305 (9th ed. 2009); W. Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 82 L.Ed. 823 (1938). Under modern *792 dormant commerce clause jurisprudence, in order for a state to tax an out-of-state corporation, the tax must be (1) "applied to an activity with a substantial nexus with the taxing State," (2) "fairly apportioned," (3) nondiscriminatory with respect to interstate commerce, and (4) "fairly related to the services provided by the State." Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); see also Ford, 160 Wash.2d at 48-49, 156 P.3d 185. Lamtec disputes only whether it has a "substantial nexus" with Washington State.
¶ 7 Lamtec argues that an entity has sufficient nexus with Washington for purposes of the B & O tax only if it has a "physical presence" here and contends that it does not have such a presence. Pet'r's Suppl. Br. at 3 (citing Nat'l Bellas Hess, Inc. v. Dep't of Revenue, 386 U.S. 753, 758, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967)); Quill, 504 U.S. at 309, 112 S.Ct. 1904. The Department suggests that this case is not a good vehicle for considering whether physical presence is required because, in its view, Lamtec clearly maintains such a presence and, alternatively, that the physical presence requirement is limited to sales and use taxes and does not apply to the B & O tax. Instead, in the Department's view, a business is subject to Washington's B & O tax if "`the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for the sales.'" Resp'ts' Suppl. Br. at 5 (quoting Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue, 483 U.S. 232, 250, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987)).
¶ 8 We note that Lamtec and the Department each interprets "physical presence" differently. Lamtec contends that the physical presence test requires a "small sales force, plant, or office" in the taxing state. Quill, 504 U.S. at 315, 112 S.Ct. 1904. Lamtec suggests a "brick and mortar" presence or at least an established sales force within the taxing state is required to establish the requisite nexus. Lamtec effectively urges us to adopt the "bright-line" physical presence test required for sales and use taxes established by Bellas Hess, 386 U.S. at 758, 87 S.Ct. 1389, in the mail order context. The Department concedes the company does not have a brick and mortar presence but argues that under Tyler Pipe, 483 U.S. at 250, 107 S.Ct. 2810, significantly less activity within a state is sufficient to establish a nexus for B & O taxes.
¶ 9 The United States Supreme Court has made clear that an established sales force is sufficient to satisfy the nexus requirement. It has not held that an established sales force (or a physical presence) is a requirement to establish the requisite nexus. "Whether or not a State may compel a vendor to collect a sales or use tax may turn on the presence in the taxing State of a small sales force, plant, or office." Quill, 504 U.S. at 315, 112 S.Ct. 1904 (emphasis added) (citing Nat'l Geographic Soc. v. Cal. Bd. of Equalization, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977) (finding the presence of two small offices sufficient for imposition of a duty to collect sales and use tax even though the activities conducted, soliciting advertising, did not relate directly to the taxed sales)). In National Geographic, 430 U.S. at 556, 97 S.Ct. 1386, the United States Supreme Court reserved judgment on California's "slightest presence" rule, finding the society's continuous presence "sufficient" for nexus. This language does not establish a "requirement."
¶ 10 Similarly, Lamtec suggests that the United States Supreme Court required "continuous local solicitation" to establish substantial nexus. Scripto, Inc. v. Carson, 362 U.S. 207, 211, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960) (finding the presence of 10 independent contractors sufficient for nexus). The court in the case cited did in fact base its finding of substantial nexus in part on continuous local solicitation, but does not call it a requirement. Id. Lamtec further asserts that, in a similar case, the United States Supreme Court "found that the crucial factor supporting Washington's jurisdiction to impose [B & O] taxes was that the sales representatives' activities, allowing the taxpayer to establish and maintain a market, actually took place in Washington." Pet'r's Suppl. Br. at 16-17 (citing Tyler Pipe, 483 U.S. at 250-51, 107 S.Ct. 2810).
¶ 11 The Department draws our attention to a number of cases where courts found *793 sufficient presence for substantial nexus based on contacts with the taxing jurisdiction that are similar to those here. E.g., Standard Pressed Steel Co. v. Dep't of Revenue, 419 U.S. 560, 562, 95 S.Ct. 706, 42 L.Ed.2d 719 (1975) (taxpayer's denial of substantial nexus "verges on the frivolous" even though its only continuous presence in the state was one employee who did not solicit or accept orders); Tyler Pipe, 483 U.S. at 249-51, 107 S.Ct. 2810 (finding substantial nexus where wholesaler's "solicitation of business in Washington is directed by executives who maintain their offices out-of-state and by an independent contractor located in Seattle"); Orvis Co. v. Tax Appeals Tribunal of N.Y., 86 N.Y.2d 165, 180-81, 630 N.Y.S.2d 680, 654 N.E.2d 954 (1995) (finding sufficient physical presence based only on 41 service visits over 3 years). The Department also cites a Washington Board of Tax Appeals opinion finding sufficient presence for purposes of the B & O tax based on even less significant contacts. Carr Lane Mfg. Co. v. Dep't of Revenue, No. 54917, 2001 WL 718027 (Wash. Bd. Tax Appeals Jan. 22, 2001). We find these authorities persuasive. A physical presence in the taxing jurisdiction for purposes of B & O tax can be based on periodic visits.
¶ 12 We note that the United States Supreme Court itself has cast some doubt on the reach of the physical presence test it established in the sales and use context. The Quill Court stated that the case establishing the physical presence requirement, Bellas Hess, might have been decided differently under contemporary commerce clause jurisprudence and upheld it in the sales and use context largely due to stare decisis and the fact that the mail order industry had relied on it as a "bright line."[5]Quill, 504 U.S. at 311, 316-17, 112 S.Ct. 1904. The Quill Court's main reason for upholding the physical presence requirement for sales and use taxes in the mail-order context was to "firmly establish[ ] the boundaries of legitimate state authority to impose a duty to collect sales and use taxes and reduce[ ] litigation concerning those taxes." Id. at 315, 112 S.Ct. 1904. The requirement suggested by Lamtec that the presence be "continuous" or "constant" would, on the contrary, create considerable uncertainty. Take, for example, a company that relies on nonexclusive independent contractors who are continuously located in the taxing state, but who devote only a small or slight amount of time to the company's projects, or a company with a sales staff that spends a considerable amount of time in the taxing state but is based in a neighboring state. Establishing physical presence in such cases would likely depend on the time and activities conducted within the taxing state.
¶ 13 As New York's high court pointed out in a case almost indistinguishable from this one,
acceptance of the thesis . . . that Quill made the substantial nexus prong of the Complete Auto test an in-State substantial physical presence requirementwould destroy the bright-line rule the Supreme Court in Quill thought it was preserving in declining completely to overrule Bellas Hess. Inevitably, a substantial physical presence test would require a "case-by-case evaluation of the actual burdens imposed" on the individual vendor involving a *794 weighing of factors such as number of local visits, size of local sales offices, intensity of direct solicitations, etc., rather than the clear-cut line of demarcation the Supreme Court sought to keep intact by its decision in Quill. Thus, ironically, the interpretation of Quill urged by the vendors here would undermine the principal justification the Supreme Court advanced for its decision in that case, the need to provide certainty in application of the standard and with it, repose from controversy and litigation for taxing States and the nearly $200 billion-a-year mail-order industry, with respect to sales and use taxes on interstate transactions.
Orvis, 86 N.Y.2d at 177, 630 N.Y.S.2d 680, 654 N.E.2d 954 (quoting Quill, 504 U.S. at 315, 112 S.Ct. 1904).[6]
¶ 14 There is also extensive language in Quill that suggests the physical presence requirement should be restricted to sales and use taxes. See, e.g., Quill, 504 U.S. at 314, 112 S.Ct. 1904 ("[W]e have not, in our review of other types of taxes, articulated the same physical-presence requirement . . . established for sales and use taxes."). Many of our sister courts have refused to apply the physical presence test to other kinds of taxes. E.g., Geoffrey, Inc. v. Comm'r of Revenue, 453 Mass. 17, 899 N.E.2d 87, cert. denied, ___ U.S. ___, 129 S.Ct. 2853, 174 L.Ed.2d 553 (2009); Lanco, Inc. v. Dir., Div. of Taxation, 188 N.J. 380, 908 A.2d 176 (2006); Tax Comm'r v. MBNA Am. Bank, N.A., 220 W.Va. 163, 640 S.E.2d 226 (2006). However, authorities are not unanimous: the Tennessee Court of Appeals has found "no basis for concluding that the analysis" should be different for franchise and excise taxes than for sales and use taxes, although it acknowledged that the Quill Court "expressed some reservations" about the requirement. J.C. Penney Nat'l Bank v. Johnson, 19 S.W.3d 831, 839 (Tenn.Ct.App.1999). But, as reviewed above, the great weight of authority concurs with the Department.
¶ 15 Even if a brick and mortar physical presence or substantial sales force is not required under due process and the dormant commerce clause, Lamtec urges us to adopt such a standard as a matter of policy for clarity sake. There is some appeal to a bright-line test for business taxation. However, we have already largely rejected Lamtec's invitation. We addressed a similar issue in Tyler Pipe Industries v. Department of Revenue, 105 Wash.2d 318, 715 P.2d 123 (1986), vacated in part, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199. Tyler Pipe had its principal place of business in Tyler, Texas and distributed cast iron, pressure and plastic pipe, and fittings nationwide. Id. at 320, 715 P.2d 123. Tyler Pipe did not have a place of business or employees within Washington but utilized independent contractors to perform the function of sales representatives. These agents performed activities within Washington necessary to maintain a market for Tyler Pipe. Id. at 320-21, 715 P.2d 123. We approved the Department's stated requisite minimal connection of "nexus" in former WAC 458-20-193B (1970), "the crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for the sales." Tyler Pipe, 105 Wash.2d at 323, 715 P.2d 123.[7] We concluded that Tyler Pipe had a *795 substantial enough relationship with Washington State to satisfy the nexus requirement, despite the fact that it had "no personnel designated as employees residing in Washington." Id. at 321, 327, 715 P.2d 123. Instead of employees, Tyler Pipe used independent contractors to represent its interests. Id. at 324, 715 P.2d 123. We found the difference between employees and independent contractors to be "without constitutional significance." Id. (citing Scripto, 362 U.S. at 211, 80 S.Ct. 619). Instead, we looked to the actual activities "by the in-state sales representative which helped Tyler Pipe establish and maintain its market in this state." Id. We found the activities were substantial and affirmed the State's authority to impose the tax. Id. at 327, 715 P.2d 123. Although it reversed on other grounds, the United States Supreme Court affirmed our holding that there was an adequate nexus to support Washington's jurisdiction to tax.
As the Washington Supreme Court determined, "the crucial factor governing nexus is whether the activities performed in this state on behalf of the taxpayer are significantly associated with the taxpayer's ability to establish and maintain a market in this state for the sales." The court found this standard was satisfied because Tyler's "sales representatives perform any local activities necessary for maintenance of Tyler Pipe's market and protection of its interests. . . ." We agree that the activities of Tyler's sales representatives adequately support the State's jurisdiction to impose its wholesale tax on Tyler.
Tyler Pipe, 483 U.S. at 250-51, 107 S.Ct. 2810 (quoting Tyler Pipe, 105 Wash.2d at 321, 323, 715 P.2d 123). We agree with the Department that the "crucial factor" in this language is that the activities were "significantly associated with the taxpayer's ability to establish and maintain" its market.
¶ 16 We conclude that to the extent there is a physical presence requirement, it can be satisfied by the presence of activities within the state. It does not require a "presence" in the sense of having a brick and mortar address within the state. We do not see a material difference whether the activities are performed by a staff permanently employed within the state, by independent agents contracted to perform the activity within the state, or persons who travel into the state from without. The activities must be substantial and must be associated with the company's ability to establish and maintain the company's market within the state. The contacts by Lamtec's sales representatives were designed to maintain its relationships with its customers and to maintain its market within Washington State. Nor were the activities slight or incidental to some other purpose or activity. We hold that Lamtec's practice of sending sales representatives to meet with its customers within Washington was significantly associated with its ability to establish and maintain its market.

CONCLUSION
¶ 17 A B & O tax is a tax on conducting business within the state. Several requirements must be met under the commerce clause before a state may levy such a tax on an out-of-state business. Among other things, there must be a substantial nexus between the taxing state and the activity taxed. Complete Auto, 430 U.S. at 279, 97 S.Ct. 1076. We find that this case is largely controlled by our decision in Tyler Pipe, 105 Wash.2d 318, 715 P.2d 123. Although Lamtec did not have a permanent presence within the state, by regularly sending sales representatives into the state to maintain its market, Lamtec satisfied the nexus requirement. We affirm the Court of Appeals and hold that the Department had authority under the commerce clause to impose a B & O tax.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, and DEBRA L. STEPHENS, Justices.
ALEXANDER, J. (dissenting).
¶ 18 In Quill Corp. v. North Dakota, 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the United States Supreme Court determined that a state violates the dormant commerce clause when it imposes a sales or use tax on an out-of-state business that has no physical presence in that state. Although courts in other jurisdictions have split on the *796 question of whether the holding in Quill is limited to sales and use taxes, unlike the majority here, I am more persuaded by the line of decisions from state courts that have extended the bright line rule of Quill to other types of state taxes. In that regard, see J.C. Penney National Bank v. Johnson, 19 S.W.3d 831 (Tenn.Ct.App.1999) (franchise and excise tax), cert. denied, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000), and Rylander v. Bandag Licensing Corp., 18 S.W.3d 296 (Tex.Ct.App.2000) (all taxes). The fact that the United States Supreme Court denied certiorari in the Tennessee case cited above as well as in cases reaching a contrary result suggests to me that it favors the right of states to exercise some discretion on the question of whether or not to apply the Quill physical presence test to state taxes other than sales and use taxes.
¶ 19 If, as I believe, a physical presence in Washington is required to justify the business and occupation (B & O) tax that was imposed here on Lamtec Corporation, it is apparent that there was not such a presence. Indeed, the State concedes that Lamtec had no physical presence in the "brick and mortar" sense. It is also undisputed that Lamtec had no employees permanently located in Washington. Occasional visits to this state by employees of Lamtec do not, in my judgment, meet the physical presence test.
¶ 20 The majority posits that Washington's imposition of the B & O tax is justified on the basis that the activity of the putative taxpayer had a substantial nexus with our state. Majority at 791-92 (citing Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977)). The majority relies heavily on our decision in Tyler Pipe Industries, Inc. v. Department of Revenue, 105 Wash.2d 318, 715 P.2d 123 (1986), vacated in part, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), as support for its conclusion that Lamtec's activities in Washington satisfy the substantial nexus requirement. In my view, that case does not support the majority's conclusion because the activities of the taxpayer in that case, Tyler Pipe, were decidedly more substantial than those of Lamtec. Significantly, as the majority notes, Tyler Pipe used independent contractors as in-state sales representatives and these representatives were involved in all of Tyler Pipe's Washington transactions to the same extent as the company's own sales personnel were involved in transactions in other parts of the country. Here, Lamtec did not engage independent contractors as a sales force. Although, as I have noted above, Lamtec employees made occasional visits to this state, they did not, as the majority acknowledges, solicit sales during those visits or perform the same sorts of functions as did Tyler Pipe's sales representatives. Rather, these representatives came here simply to answer questions and provide information to customers about Lamtec products.
¶ 21 Washington imposes a B & O tax on the privilege of engaging in business in this state. Lamtec's contacts with Washington were quite insignificant and do not support a holding that its activities had a sufficient nexus or connection to Washington so as to justify imposition of our B & O tax. I am, therefore, of the view that we should reverse the Court of Appeals. Because the majority does otherwise, I dissent.
WE CONCUR: JAMES M. JOHNSON, Justice and RICHARD B. SANDERS, Justice Pro Tem.
NOTES
[1] The Department assessed another $3,621.77 in tax, $949.21 in penalties, and $18.60 in interest for the first two quarters of 2004, but Lamtec has apparently not included these amounts in its petition. Compare CP at 63 with Pet'r's Suppl. Br. at 16.
[2] The ruling does not appear in the record before this court, and we could not find it on the Board of Tax Appeals web site. We accept the characterization of it supplied by the parties.
[3] Among other things, Lamtec argued below that no tax was due because the sales actually took place in New Jersey since the orders were received there and shipped F.O.B. "F.O.B." means "free on board" and implies that risk of loss passes to the purchaser when the common carrier receives the goods. Black's Law Dictionary 737 (9th ed. 2009). The courts below rejected this argument, in large part because the tax code explicitly states that delivery of goods to a common carrier outside the state does not constitute receipt for purposes of the B & O tax unless the carrier has written authorization to inspect and then accept or reject the goods on behalf of the purchaser. No such authorization appears in the record. Verbatim Report of Proceedings at 41; Lamtec, 151 Wash.App. at 460, 215 P.3d 968 (citing WAC 458-20-193(7)(a)). As Lamtec does not raise the issue in its petition to this court, we do not reach it. RAP 13.7(b).
[4] The 2010 legislature rewrote this provision. It currently reads:

There is levied and collected from every person that has a substantial nexus with this state a tax for the act or privilege of engaging in business activities. The tax is measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be.
LAWS OF 2010, 1st Spec. Sess., ch. 23, § 102. We do not consider the impact, if any, of the revision to this statute.
[5] Some jurists dispute whether the line drawn by the physical presence test is really that "bright." In Quill, for example, Justice White pointed out in a separate opinion that

the question of Quill's actual physical presence is sufficiently close to cast doubt on the majority's confidence that it is propounding a truly "bright-line" rule. Reasonable minds surely can, and will, differ over what showing is required to make out a "physical presence" adequate to justify imposing responsibilities for use tax collection. And given the estimated loss in revenue to States of more than $3.2 billion this year alone . . . it is a sure bet that the vagaries of "physical presence" will be tested to their fullest in our courts.
504 U.S. at 330-31 (White, J., concurring in part and dissenting in part). There has indeed been a great deal of litigation in this area, of which this case is one example. See generally Thomas Steele & Kirsten Wolff, USC Gould School of Law 2009 Tax Institute: The Current State of "Attributional Nexus": When May a State Use the Presence of an In-State Entity to Claim Jurisdiction over an Out-of-State Seller?, 2009 EMERGING ISSUES 4522 (Nov. 3, 2009); Carol Schutz Vento, Sufficient Nexus for State To Require Foreign Entity To Collect State's Compensating, Sales, or Use TaxPostComplete Auto Transit Cases, 71 A.L.R.5th 671 (1999).
[6] In terms of its structure and reporting requirements, the B & O tax differs sharply from a sales or use tax: sales and use taxes are stated separately, imposed on a transaction by transaction basis, and usually involve numerous limitations and exemptions intended to ensure that their burdens fall upon the final purchaser or consumer. By contrast, gross receipts taxes, such as Washington's B & O tax, are calculated quarterly or annually, are aimed at the seller, and seldom involve limitations or exemptions. See generally Walter Hellerstein et al., Commerce Clause Restraints on State Taxation After Jefferson Lines, 51 TAX L.REV. 47, 86-93 (1995) (explaining distinctions between gross receipts and sales and use taxes). As a result, compliance with the B & O tax arguably poses much less of a problem for an out-of-state wholesaler than a duty to collect a sales tax does for a mail order catalog company.
[7] Since we decided Tyler Pipe, both the statute and the regulation have changed. LAWS OF 2010, 1st Spec. Sess., ch. 23, § 102; former WAC 458-20-193B, repealed by Wash. St. Reg. XX-XX-XXX (Jan. 1, 1992). The regulation has since become incorporated into WAC 458-20-193. There is no challenge to the current regulation before us, and we do not consider the impact, if any, of the new statute.